## COMMONWEALTH vs. LASTARANDRE BELL.

Hampden. December 10, 2010. - August 1, 2011.

Present: IRELAND, SPINA, CORDY, BOTSFORD, GANTS, & DUFFLY, JJ.

*Homicide. Armed Home Invasion. Burning a Dwelling House. Constitutional Law,* Assistance of counsel. *Felony-Murder Rule. Practice, Criminal,* Assistance of counsel, Empanelment of jury, Voir dire, Postconviction relief, Capital case, Instructions to jury. *Jury and Jurors.*

At the trial of indictments charging, inter alia, arson as well as murder in the first degree on a theory of felony-murder, based on the predicate felony of armed home invasion, there was sufficient evidence that the defendant threatened the imminent use of force on the occupants of the apartment that could be found to be separate from his actions causing the victim's death [299-302]; however, this court did not reach the question whether a substantial risk of a miscarriage of justice arose from the judge's failure to instruct the jury that in order for armed home invasion to serve as the predicate felony, they were required to find that the Commonwealth had proved that any use or threatened use of force or infliction of injury by the defendant was separate and distinct from the defendant's acts that caused the victim's death [302-303]; rather, this court concluded that a substantial likelihood of a miscarriage of justice resulted from the fact that the jury were not provided with the opportunity to consider a verdict of felony-murder in the second degree based on arson [306-310].

At the trial of indictments charging, inter alia, arson, defense counsel's failure to move for individual voir dire of the jury regarding the defendant's bandaged hands did not constitute ineffective assistance, where it was not disputed that the defendant himself was burned by the fire. [303-305]

There was no error in the denial of a criminal defendant's motion for a new trial on the ground of ineffective assistance of counsel on the basis of defense counsel's failure to adequately investigate. [305-306]

INDICTMENTS found and returned in the Superior Court Department on February 13, 2007.

The cases were tried before *Cornelius J. Moriarty, II,* J., and a motion for postconviction relief, filed on June 23, 2009, was heard by him.

*Joseph A. Hanofee* for the defendant.

*Katherine E. McMahon,* Assistant District Attorney, for the Commonwealth.

BOTSFORD, J. A Superior Court jury convicted the defendant Lastarandre Bell of murder in the first degree of Julie Ann Nieves on a theory of felony-murder.[1] The defendant also was convicted of armed home invasion, arson, and two charges of violation of an abuse prevention order. The defendant appeals both from his convictions and from the denial of his motion for a new trial. He claims that (1) the merger doctrine renders legally impossible his felony-murder conviction because the underlying felony and the homicide share the same conduct, and defense counsel was ineffective for not raising the issue; and (2) defense counsel was ineffective as well in several other respects, including the manner in which he investigated and tried the case. The defendant argues also that relief is warranted pursuant to G. L. c. 278, § 33E. For reasons different from those advanced by the defendant, we conclude, pursuant to our review of the entire case under § 33E, that the absence of an instruction on felony-murder in the second degree with arson as the predicate felony requires a reversal of the defendant's conviction of felony-murder in the first degree.[2] Accordingly, we reverse the defendant's conviction of that crime, set aside the verdict, and remand the case to the Superior Court for further proceedings. On remand, at the Commonwealth's option, a verdict of guilty of felony-murder in the second degree may be entered in lieu of a new trial on the murder indictment. We affirm the defendant's other convictions.

*Background.* The events giving rise to this case resulted in a grand jury charging the defendant with nine separate offenses in indictments handed up in February of 2007: (1) murder in the first degree of Julie Ann Nieves, G. L. c. 265, § 1; (2) arson, G. L. c. 266, § 1; (3) armed home invasion, G. L. c. 265, § 18C; (4)-(5) two charges of assault by means of a dangerous weapon, a knife, against Julie Ann Nieves and Tiffany Cruz, respectively, G. L. c. 265, § 15B (b); (6) assault and battery by

---

[1]The Commonwealth proceeded on all three theories of murder in the first degree, but the jury did not find the defendant guilty on a theory of either deliberate premeditation or extreme atrocity or cruelty.

[2]After oral argument in this case, we requested the parties to address whether an instruction on felony-murder in the second degree predicated on arson should have been given and, if so, what should be the result. The parties filed supplemental memoranda in response to our request.

means of a dangerous weapon, a hammer or knife, against Julissa Cruz, G. L. c. 265, § 15A (*b*); (7) assault and battery by means of a dangerous weapon, gasoline, against Larry Key, G. L. c. 265, § 15A (*b*); and (8)-(9) two charges of violating an abuse prevention order, G. L. c. 209A, § 7. Not all nine charges, however, reached the jury. Before jury empanelment began, the prosecutor stated that the Commonwealth would file a nolle prosequi on Counts 4 and 5, and the Commonwealth did not proceed on either charge at trial.[3] At the close of the Commonwealth's case-in-chief, defense counsel moved for entry of a required finding of not guilty on Count 6, which the Commonwealth did not oppose and which the trial judge allowed. As indicated, the jury convicted the defendant on the charges of murder, arson, armed home invasion, and the two charges of violation of an abuse prevention order (Counts 1, 2, 3, 8, and 9).[4] The jury acquitted the defendant of the charge of assault and battery by means of a dangerous weapon against Larry Key (Count 7).

After he filed a notice of appeal from his convictions, the defendant filed in this court a motion for a new trial that we remanded to the Superior Court for disposition. The trial judge denied the motion.

We summarize the facts as the jury could have found them at trial. On January 7, 2007, Julie Ann Nieves, her daughter Jessica Nieves, and her son Daniel Nieves were living at 11 Warner Street in Springfield.[5] This was the home of Julie Ann's sister, Caroline Cruz, who lived there with her two daughters, Tiffany Cruz and Julissa Cruz,[6] and Tiffany's boy friend, Larry Key. The defendant, at the time Jessica's boy friend, had moved with the Nieves family to Springfield from New York City in October,

---

[3]The nolle prosequi on each of these charges, however, was not filed until January 15, 2009.

[4]The defendant was sentenced to a mandatory life sentence on Count 1 (murder in the first degree); twenty to twenty-five years on Count 2 (armed home invasion); fifteen to twenty years on Count 3 (arson); and one year on Counts 8 and 9 (violation of the restraining orders). All other sentences were concurrent with the sentence on Count 1.

[5]Because Julie Ann Nieves and her children, Jessica and Daniel Nieves, share the same surname, we refer to them by their first names.

[6]We also refer to Caroline Cruz, Tiffany Cruz, and Julissa Cruz by their first names.

2006, and into Caroline's apartment. On November 3, 2006, both Jessica and Caroline obtained restraining orders against the defendant. According to Jessica, the basis for the restraining orders was the fact that the defendant had "made threatening comments towards [her] as far as hurting [her] or [her] family." On November 6, the defendant moved out of 11 Warner Street to an apartment building a short distance away.

On the night of January 7, 2007, all the residents of the Warner Street apartment were at home. The defendant dialed Daniel's Nextel telephone twice, both calls occurring shortly before 9:30 P.M.[7] The first time, the defendant asked to speak with Jessica, but Daniel ignored the call. A few minutes later, the defendant called Daniel again, asking in an angrier tone to speak to Jessica; Daniel again ignored the call. Around 9:30 P.M., the occupants of the home, at the time in various rooms, heard what sounded like glass shattering and also heard Julissa scream. Arriving in the kitchen area, they saw the defendant approaching them from the living room where a window had been broken. He was holding a bottle or container in his hand from which he sprayed some type of liquid around him as he ran toward those present in or just outside the kitchen.[8] Key saw a knife sticking out of the defendant's pocket and also saw the defendant, while holding something sharp, swing at Julie Ann and Tiffany as they ran past him.[9] The family members together ran into Caroline's bedroom and locked the door. They realized that the

---

[7]Nextel cellular telephones are similar to "walkie-talkies," thus allowing multiple occupants of the home to hear the same conversation, and allowing a listener to hear the speaker on the other end without actually answering or responding to the call. The Nextel telephone also displays the caller's telephone number and the name associated with that number.

[8]There was conflicting testimony concerning the defendant's actions immediately after he entered the apartment. Caroline testified that the defendant was holding a "squirt-looking bottle just spraying everything"; Daniel testified that the defendant was following Julissa as she ran, holding a container, black or silver in color, with a clear funnel, "spraying . . . liquid gasoline around the house." Jessica saw the defendant approaching the family "waving some kind of something in his hand. The only thing that I could figure out it was like liquid. I didn't see the object in his hand." Finally, Key testified that the defendant was running toward the family holding a tank of gasoline and a lighter, saying, "Oh, what now. I got you. I got you now. You think it's a joke. I got you now."

[9]Key also testified that he tried to stop the defendant as he was running and

victim was not with them. Caroline heard an argument ensuing between the victim and the defendant on the other side of the closed door; Jessica and Daniel heard the victim scream. They all then emerged from the bedroom. At that point, the victim's bedroom was on fire, the defendant was trying to open the front door and his leg appeared to be on fire, and the victim, appearing to be on fire herself, was walking slowly toward the front door. The defendant left the house; Key chased him, but quickly abandoned the pursuit. Jessica eventually grabbed a sheet or quilt and wrapped it around her mother to put out the flames.

When police arrived, the house itself was on fire, and the victim was wrapped in blankets on the front porch. After speaking with the family, four police officers, in a police cruiser, searched for the defendant. They pulled over before arriving at the defendant's nearby apartment to discuss their strategy and saw the defendant walking toward them, saying, "I'm here. I'm the one you're looking for. I'm the one who started the fire."[10] After the officers placed the defendant in handcuffs, Officer Kevin Ashworth conducted a patfrisk search, which revealed matches in the defendant's pocket. The defendant stated, "That's what I used to start the fire." The officers told the defendant to stop talking and read him the Miranda rights. Realizing the defendant had burns on his face, hands, and legs, the officers called for an ambulance. As the defendant was being brought to the ambulance, another officer commented that the defendant smelled of gasoline, and the defendant again stated, "That's what I used to start the fire."[11]

---

spraying, but felt contact with gasoline on his (Key's) hair, shirt, and ears. Although gasoline residue was found on the victim's underwear and on many items of the defendant's clothing, none was found on Key's shirt. An analyst from the State police crime laboratory arson and explosives unit testified that Key's shirt lacked the odor of gasoline present on the defendant's effects. The jury found the defendant not guilty of assault and battery of Key by means of a dangerous weapon (gasoline).

[10]The defendant moved unsuccessfully to suppress these statements before trial, arguing that he had not been properly advised of his Miranda rights. The defendant does not raise any issue on appeal with respect to the denial of his suppression motion, and our review under G. L. c. 278, § 33E, has not identified any such issue.

[11]The defendant testified at trial, portraying the events of January 7, 2007, quite differently. He stated that he and Jessica had an ongoing romantic

A substantially burned red plastic gasoline can was found in a bedroom at 11 Warner Street, and a black gasoline filler pipe or nozzle was found in the living room area. Liquid taken from the gasoline can tested positive for gasoline residue, as did the black plastic nozzle. During a subsequent search of the defendant's nearby apartment, police found an empty, unburned red plastic gasoline can in the front hall closet.

The victim died on January 29, 2007, as a result of the burn injuries she received on January 7.

*Discussion.* 1. *Merger.* The defendant argues that his conviction of felony-murder cannot stand because the predicate felony, armed home invasion, effectively merged into the killing of the victim — that is, he claims, the acts of personal violence against the victim that caused her death were the same acts that satisfied one of the elements of armed home invasion, and therefore there was no separate felony on which the felony-murder conviction could be based. The defendant did not raise this claim before or during the trial, but he presented it as one of the grounds in support of his motion for a new trial, arguing that his trial counsel was ineffective for failing to make the merger argument. We review the issue to determine whether there is a substantial likelihood of a miscarriage of justice. See *Commonwealth* v. *Bly*, 444 Mass. 640, 648 (2005) (when unpreserved error offered as ground for new trial based on ineffective assistance of counsel in case of murder in first degree, court applies substantial likelihood of miscarriage of justice standard of review).

relationship through December, 2006, notwithstanding the restraining order. On the night of January 7, he had locked his Nextel telephone and his keys inside his apartment and called Daniel from someone else's Nextel telephone because Jessica had a spare set of his apartment keys. Jessica then told him to come to 11 Warner Street and get the keys. He arrived and rang the doorbell, but no one answered. He stood outside, smoking a cigarette, and then "banged" on the window, at which point the window shattered. He removed the glass, went inside, and walked toward the bedroom that he and Jessica had shared, calling for her. Instead, he was confronted by the victim, who said, "This shit is going to stop," and threw gasoline on him from a red gasoline can. The defendant still had the cigarette in his mouth, and the gasoline ignited. He threw the gasoline can away and pulled her from the room before heading for the front door. He struggled with the front door because his hands were burned. The defendant denied approaching the police or making any of the alleged inculpatory statements. He also denied seeing Key that night.

"[I]n felony-murder the conduct which constitutes the felony must be separate from the acts of personal violence which constitute a necessary part of the homicide itself." *Commonwealth* v. *Gunter*, 427 Mass. 259, 272 (1998), quoting *Commonwealth* v. *Quigley*, 391 Mass. 461, 466 (1984), cert. denied, 471 U.S. 1115 (1985) (quotations and citation omitted). Accord *Commonwealth* v. *Pagan*, 440 Mass. 84, 92 n.8 (2003). The predicate felony of armed home invasion has four separate elements. In particular,

> "the Commonwealth must show that the defendant (1) 'knowingly enter[ed] the dwelling place of another'; (2) 'knowing or having reason to know that one or more persons are present within' (or entered without such knowledge but then remained in the dwelling place after acquiring or having reason to acquire such knowledge); (3) 'while armed with a dangerous weapon'; and (4) 'use[d] force or threaten[ed] the imminent use of force upon any person within such dwelling place whether or not injury occur[red], or intentionally cause[d] any injury to any person within such dwelling place.' "

*Commonwealth* v. *Doucette*, 430 Mass. 461, 465-466 (1999), quoting G. L. c. 265, § 18C. The issue of merger presented here by the defendant arises in connection with the fourth element; the question is whether there was evidence presented that the defendant used force, threatened the imminent use of force, or intentionally injured someone in the apartment, independent of the burning of the victim that ultimately caused her death. "Whether a particular felony is sufficiently independent from a killing to support a felony-murder conviction is a question that defies categorical analysis; we therefore review claims of merger on a 'case-by-case basis with reference to specific facts.' " *Commonwealth* v. *Kilburn*, 438 Mass. 356, 359 (2003), quoting *Commonwealth* v. *Gunter*, *supra* at 275 n.15.

In this case, there was no evidence that the defendant actually used force against the victim distinct from the force the jury could find that he used (igniting the fire) that led to her death. Nor was there evidence suggesting that the defendant used actual force against, or intentionally caused injury to, anyone other than the victim. It is necessary, therefore, to determine

whether there was evidence of his threatened imminent use of force against anyone in the apartment. See *Commonwealth* v. *Pagan, supra.* Cf. *Commonwealth* v. *Kilburn, supra* at 362 (no merger between homicide and predicate felony of armed assault in dwelling, G. L. c. 265, § 18A, where there was "unequivocal and uncontested" evidence of earlier assault on homicide victim that was separate from gunshot causing victim's death); *Commonwealth* v. *Gunter, supra* at 273-274 (no merger of homicide and predicate felony of armed assault in dwelling where ample evidence presented of separate assaults against other persons in dwelling in addition to homicide victim). On this issue, the disposition of the charges alleging separate assaults against individuals present in the Warner Street apartment at the time of the fire is relevant. As previously stated, the prosecutor announced at the start of the trial that the Commonwealth would nol pros Counts 4 and 5, respectively charging the defendant with assault of the victim and Tiffany with a knife, and accordingly did not pursue those counts; the trial judge entered a finding of not guilty on Count 6, which charged assault of Julissa with a hammer or knife; and the jury acquitted the defendant of Count 7, which charged assault of Key with gasoline. The Commonwealth argues, however, that independent of these specific alleged assaults, there was evidence of imminently threatened force in the form of assaults on all the apartment's occupants as the defendant pursued the family members through the home.

We agree. Although it is not permissible to "infer a threat of force merely from the fact that the defendant was in the dwelling and was armed," *Commonwealth* v. *Brown*, 451 Mass. 200, 206 (2008), the evidence here — despite the confusing and somewhat conflicting testimony of the witnesses, see notes 8 and 9, *supra*, and the defendant's denials, see note 11, *supra* — would permit the jury to find that (1) the defendant, having come crashing through the window, moved at a rapid pace toward the family, spraying liquid as he approached in a manner that reasonably could be characterized as threatening; and (2) the liquid being sprayed from the container was gasoline, thus making it a dangerous weapon.[12] Accordingly, we conclude that the

---

[12]There was evidence that a police dog, trained to alert to gasoline, alerted

Commonwealth presented sufficient evidence that the defendant "threatened the imminent use of force" on the occupants of the apartment that could be found to be separate from his actions causing the death of the victim. Compare *Commonwealth* v. *Gunter,* 427 Mass. at 274 ("ample evidence presented by the Commonwealth of independent assaults").

This conclusion does not end the inquiry, however. See *Commonwealth* v. *Kilburn,* 438 Mass. at 359-360. The judge's instruction on felony-murder explained that for the jury to find the defendant guilty of this crime based on the predicate felony of armed home invasion, they were required to find that the Commonwealth had proved beyond a reasonable doubt that the killing occurred in the commission or attempted commission of the home invasion. However, the instruction did not explain that in order for armed home invasion to serve as the predicate felony, the jury must find the Commonwealth had proved that any use or threatened use of force or infliction of injury by the defendant — namely, the conduct constituting the fourth element of armed home invasion — was separate and distinct from the acts of the defendant that caused the victim's death. See *id.* at 359; *Commonwealth* v. *Gunter, supra.*[13] Rather, the judge simply tracked the language of G. L. c. 265, § 18C, and outlined that in order to find the fourth element of the crime proved, the jury must find proof of one of the three alternatives set out in the statute: that the defendant used force, or threatened the imminent use of force, or intentionally caused injury to a person in the dwelling house. We need not resolve whether there was a substantial likelihood of a miscarriage of justice as a result, however, because, as mentioned at the outset, we conclude under G. L. c. 278, § 33E, that reversal of the defendant's conviction of felony-murder in the first degree is required for a separate reason.

---

to the sill of the broken window, the living room, and the gasoline can found in the rear bedroom. There was no evidence that any of the occupants carried the gasoline can back toward the front of the house as they left. The jury therefore would have been warranted in concluding that the defendant entered the apartment through the window holding the gasoline can and spilled gasoline as he advanced.

[13]In the *Gunter* case, we recommended that it would be advisable for the Commonwealth to "seek jury questions specifying the independent felonious assault." *Commonwealth* v. *Gunter,* 427 Mass. 259, 274 (1998). The Commonwealth did not follow the recommendation here.

See part 3, *infra*. However, on any retrial of the charge of felony-murder in the first degree, if armed home invasion again is advanced as the predicate felony, the jury must be instructed that they may not find the defendant guilty of felony-murder unless, with respect to armed home invasion, they find the Commonwealth has proved the fourth element of the crime, i.e., conduct of the defendant that was separate and distinct from the acts that caused the victim's death.[14]

2. *Other claims of ineffective assistance of counsel.* The defendant argues that trial counsel's conduct both in preparation for trial and at trial deprived him of the effective assistance of counsel and that, as a result, his convictions of, inter alia, arson and armed home invasion must be reversed. Because these are non-capital offenses, we apply the standard of review for ineffective assistance of counsel claims set out in *Commonwealth* v. *Saferian*, 366 Mass. 89, 96-97 (1974). See *Commonwealth* v. *Johnson*, 435 Mass. 113, 123 (2001). "A defendant must demonstrate a 'serious incompetency, inefficiency, or inattention of counsel — behavior of counsel falling measurably below that which might be expected from an ordinary fallible lawyer — and, if that is found, then, typically, whether it has likely deprived the defendant of an otherwise available, substantial ground of defence.' In regard to the latter requirement, 'there ought to be some showing that better work might have accomplished something material for the defense.' " *Id.*, quoting *Commonwealth* v. *Satterfield*, 373 Mass. 109, 115 (1977).

a. *Juror voir dire.* "General Laws c. 234, § 28, provides that a trial judge must, for the purpose of determining whether a juror stands indifferent in a case, conduct an individual voir dire of each prospective juror if it appears that a substantial risk exists that an extraneous issue might affect the outcome of the case." *Commonwealth* v. *Kater*, 432 Mass. 404, 413 (2000). "The scope of voir dire rests in the sound discretion of the trial judge, and a determination by the judge that a jury are impartial will not be overturned on appeal in the absence of a clear showing of abuse of discretion or that the finding was clearly erroneous. . . . A trial judge, who is aware of the facts of a

[14]The Model Jury Instructions on Homicide 68 n.8 (1999) are not consistent with this conclusion, and in this respect no longer should be followed.

particular case and can observe firsthand the demeanor of each prospective juror, is in the best position to determine what questions are necessary reasonably to ensure that a particular jury can weigh and view the evidence impartially." *Commonwealth* v. *Lao*, 443 Mass. 770, 776-777 (2005), *S.C.*, 450 Mass. 215 (2007) and *ante* 12 (2011) (citations omitted).[15] On appeal, we will not disturb a trial judge's decision "unless the complaining party demonstrates that there was a substantial risk that the case would be decided in whole or in part on the basis of extraneous issues." *Commonwealth* v. *Sheline*, 391 Mass. 279, 290-291 (1984).

During the jury selection process, two prospective jurors stated they could not be impartial because of the bandages on the defendant's hands.[16] They were excused. At that time, both the prosecutor and defense counsel agreed there was no dispute that the defendant himself had been burned as a result of the fire occurring at the 11 Warner Street apartment. The defendant now argues, however, that in effect his bandaged hands presented an extraneous issue, that the jury's ability to "gaze on the defendant's bandages without ever having been screened for bias" during the remainder of jury selection and during the prosecution's direct case solidified in the jurors the belief that the defendant had been burned because he deliberately started the fire, and that defense counsel was ineffective for not insisting on individual questioning of every prospective juror about the impact of his bandaged hands.

The argument fails. From very early in the trial it was clear that the defendant had been burned in the fire. In his opening statement, the prosecutor noted that occupants of the home had seen the defendant with "flames on his clothes"; Jessica testified that the defendant had "fire on his leg"; and police Officer Kevin

---

[15]A substantial risk that extraneous issues likely will influence prospective jurors, as a matter of law, exists in "cases involving interracial murder . . . where the victim and the defendant are of different races," rendering individual questioning of each juror on the subject of racial prejudice mandatory on request. *Commonwealth* v. *Lopes*, 440 Mass. 731, 737 (2004). This case raised the issue of interracial murder, and the judge individually questioned each prospective juror about the issue.

[16]One prospective juror stated, "I'm aware [that the defendant] has dressings on his hands which play — have been due to a burn and that would influence me, yes"; the other said that the bandages "might throw me off."

Ashworth confirmed that the defendant's hands were burned. The defendant himself testified to his hands being "burnt beyond recognition"; defense counsel introduced photographs of those burns and referred to them in his closing argument. It is simply not logical to conclude that the jury would infer that the defendant started the fire from the undisputed fact that he himself was burned by the fire. Counsel was therefore not ineffective in failing to move for individual voir dire of the jury as to the defendant's bandaged hands.

b. *Failure to prepare for trial.* The defendant argues that, despite being appointed nearly one year before trial, trial counsel did not begin any investigation until one month before trial when he first sought funds for a private investigator. Further, the defendant complains that trial counsel spent less than three hours interviewing the defendant, and that the private investigator never interviewed him. The defendant assigns further error to the investigator for not finding witnesses who could have corroborated the defendant's version of events and, particularly, in not obtaining the defendant's cellular telephone records for January 7, 2007. Finally, the defendant wanted defense counsel to investigate a particular incident allegedly occurring in April of 2006 in New York and involving the victim and one of her sons — an incident that, according to the defendant, would have given credibility to the defendant's argument that the victim was in fact capable of acting violently against him in order to protect her family.

In denying the defendant's motion for a new trial, the judge found that, given the silence of trial counsel's affidavit on these matters — and in particular on the question whether the defendant had ever mentioned to his counsel his cellular telephone records or the alleged earlier incident in New York — all that was presented was the defendant's own, self-serving affidavit.[17] The judge then concluded that "better work would not have produced something material for the defense." See *Commonwealth* v. *Saferian*, 366 Mass. at 96. As the judge himself noted, he was not required to, and implicitly did not, credit the

---

[17]The judge also indicated that even if the investigator had uncovered the prior conduct of the victim alleged by the defendant, it was far from clear that such evidence would have been admissible. We agree.

defendant's affidavit. See *Commonwealth* v. *Goodreau*, 442 Mass. 341, 351 (2004). We accept a motion judge's determination of the credibility of an affidavit on a motion for a new trial, *Commonwealth* v. *Ridge*, 455 Mass. 307, 325 (2009), especially where, as here, the judge also presided at trial. See *Commonwealth* v. *Thomas*, 399 Mass. 165, 167 (1987). We find no error in the judge's conclusion that trial counsel's failure to investigate did not amount to ineffective assistance of counsel in this case.

3. *Review under G. L. c. 278, § 33E.* As discussed, the defendant was convicted of felony-murder in the first degree based on armed home invasion. He also was convicted of arson, which may serve as the predicate felony for felony-murder in the second degree. *Commonwealth* v. *Martinez*, 393 Mass. 612, 616 n.1 (1985). *Commonwealth* v. *Rhoades*, 379 Mass. 810, 817, 823 (1980). However, no instruction on felony-murder in the second degree was requested by the defense or otherwise given by the judge. Although neither party raised this issue on appeal (see note 2, *supra*, and accompanying text), in accordance with our obligation to review the entire case under G. L. c. 278, § 33E, we nonetheless consider whether the failure to give an instruction on felony-murder in the second degree with arson as the predicate felony, which could have given rise to a conviction of a lesser degree of murder, created a substantial likelihood of a miscarriage of justice. Cf. *Commonwealth* v. *Martinez, supra* (defendant, charged with murder of occupants of tenement house she allegedly set on fire, held entitled to new trial on murder convictions because of error in jury instructions; court observed in closing that at retrial "consideration should be paid" to "the possibility of instructing the jury as to arson-felony murder, which would be murder in the second degree . . . . No instruction on [this] point was requested or given" [citations omitted]).

Instructions on felonies that could give rise to a conviction of a lesser degree of felony-murder are properly conceptualized as instructions involving degrees of murder. See *Commonwealth* v. *Christian*, 430 Mass. 552, 557 (2000).[18] "An instruction on felony-murder in the second degree is required . . . when there

---

[18]An instruction on a lesser-included offense is required when the evidence so permits and "upon request" by one of the parties. *Commonwealth* v.

is a rational basis in the evidence to warrant the instruction."
*Id.* at 558. See *Commonwealth* v. *Paulding*, 438 Mass. 1, 10 n.4
(2002) ("Of course, if the evidence supports a verdict of felony-
murder in the second degree within the charge of felony-murder
in the first degree, that form of murder in the second degree
would have to be explained to the jury").[19]

*Hobbs*, 385 Mass. 863, 871 (1982). In certain circumstances, this court has
treated a request for an instruction on a felony giving rise to a lesser degree of
felony-murder as a request for an instruction on a lesser-included offense. See,
e.g., *Commonwealth* v. *Roberts*, 407 Mass. 731, 737 (1990) (where defendant
convicted of felony-murder in first degree based on armed robbery, no error in
failing to give instruction on larceny [from person] as basis for felony-murder in
second degree where defendant had rejected trial judge's invitation to give such
instruction and had pursued all-or-nothing defense; larceny [from person] analyzed
as lesser included offense of armed robbery); *Commonwealth* v. *Glowacki*, 398
Mass. 507, 513-515 (1986) (defendant convicted of felony-murder in first
degree based on unarmed robbery; no error in not giving instruction on larceny
from person as basis for felony-murder in second degree where no view of facts
supported it; larceny analyzed as lesser included offense of unarmed robbery).
In *Commonwealth* v. *Christian*, 430 Mass. 552, 557 (2000), however, this court
explained that "[t]he application of the standard of 'lesser included offense' of
the 'crime charged' is not, strictly speaking, correct in [the context of felony-
murder] because robbery is not the charged offense, but merely the predicate to
the charged offense of murder in the first degree." See *Commonwealth* v. *Rego*,
360 Mass. 385, 395-396 (1971) (in context of felony-murder conviction based
on armed robbery, evidence warranted inference that killing occurred while
defendants were committing lesser crime of breaking and entering; issue analyzed
as one involving degrees of murder, not lesser included offenses); *Commonwealth*
v. *White*, 353 Mass. 409, 424-426 (1967), cert. denied sub nom. *White* v. *Mas-
sachusetts*, 391 U.S. 968 (1968) (same).

[19]The Commonwealth argues that the phrase in the quoted parenthetical from
*Paulding*, "within the charge of felony-murder in the first degree," should be
interpreted to require instruction on a lesser degree of culpability for felony-
murder only when the felony providing the basis for that lesser degree is a
lesser-included offense; because arson is "an alternate basis, not a lesser included
basis, of culpability," therefore, no such instruction was required. We disagree.
When the phrase is read in the context in which it appears in the *Paulding*
opinion, it is clear that the court was seeking only to identify separately and in
general terms the two distinct forms of murder in the second degree — that is,
"traditional" murder in the second degree based on malice, and felony-murder
in the second degree based on a felony not punishable by life imprisonment —
and to point out that where the Commonwealth is proceeding on a theory of
felony-murder in the first degree and there is evidence that would support a
verdict of murder in the second degree based on malice or felony-murder in the
second degree, instructions on either or both forms of murder in the second
degree should be given. *Commonwealth* v. *Paulding*, 438 Mass. 1, 10 & n.4
(2002), citing *Commonwealth* v. *Christian*, 430 Mass. at 558. See G. L. c. 265,
§ 1 ("The degree of murder shall be found by the jury").

"A conviction of felony-murder in the second degree requires the jury to find that (1) the defendant committed or attempted to commit a felony with a maximum sentence of less than imprisonment for life, (2) a killing occurred during the commission or attempted commission of that felony, and (3) the felony was inherently dangerous or the defendant acted with conscious disregard for the risk to human life." *Commonwealth* v. *Christian, supra* at 558. In this case, there can be no question that the evidence supported a verdict of felony-murder in the second degree premised on arson.

The jury concluded on clearly adequate evidence that the defendant was guilty of arson. In particular, the evidence was more than sufficient for the jury to have found that the defendant sprayed or poured gasoline inside the apartment at 11 Warner Street and lit that gasoline on fire with the matches he later surrendered to police. See *Commonwealth* v. *Rhoades,* 379 Mass. at 817 ("the chain of circumstances permitted the jury to infer that the defendant 'wilfully and maliciously' set the fire"). Moreover, the victim died as a result of the burns she received in that fire — a fact to which the defendant and the Commonwealth actually stipulated at trial. Finally, this court has long recognized arson as an inherently dangerous felony. See *Commonwealth* v. *Matchett,* 386 Mass. 492, 505 n.15 (1982). There was in this case, therefore, a rational and indeed quite compelling evidentiary basis for an instruction on felony-murder in the second degree.

In *Commonwealth* v. *Rego,* 360 Mass. 385 (1971), the defendants were convicted of murder in the first degree based on the predicate felony of robbery, and were also convicted of breaking and entering in the nighttime. *Id.* at 386, 390. No jury instruction explaining that the crime of breaking and entering could result in a verdict of guilty of felony-murder in the second degree was given, although the jury were instructed on murder in the second degree based on malice. *Id.* at 394-395. Given that there was significant evidence warranting a determination the defendants were actually engaged in breaking and entering when the victim was killed, this court remanded the case to the Superior Court for entry of verdicts of guilty of murder in the second degree. *Id.* at 395-397.[20] See *Commonwealth* v. *White,*

---

[20]See *Commonwealth* v. *Glowacki,* 398 Mass. at 514-515, discussing the facts of the *Rego* case.

353 Mass. 409, 424-426 (1967), cert. denied, 391 U.S. 968 (1968) (failure to instruct jury on felony-murder in second degree based on breaking and entering where defendant convicted of felony-murder in first degree based on robbery created "possible miscarriage of justice"; court remanded for entry of verdict of guilty of murder in second degree). In the circumstances of this case, we conclude that a substantial likelihood of a miscarriage of justice resulted from the fact that the jury were not provided with the opportunity to consider a verdict of felony-murder in the second degree based on arson; the fact that the defendant did not request such an instruction is not dispositive.[21] The defendant's conviction of felony-murder in the first degree must be reversed.[22]

On remand, the Commonwealth may retry the defendant on the indictment charging him with murder in the first degree, and may proceed on all three theories that were put before the jury

[21]The Commonwealth argues that there was no substantial likelihood of a miscarriage of justice for two reasons. First, the jury were instructed they must return a verdict of the highest crime proved beyond a reasonable doubt. Given that the jury convicted the defendant of felony-murder in the first degree, and given that this verdict was supported by the evidence, the argument goes, an instruction of felony-murder in the second degree would not alter the outcome. This argument fails. The fact that the jury were not instructed on felony-murder in the second degree based on arson impermissibly withdrew from them consideration of a lesser degree of culpability. Cf. *Commonwealth* v. *Woodward*, 427 Mass. 659, 665 (1998) (judge's refusal to instruct on lesser included manslaughter charge "impermissibly prevented the jury from considering a lesser degree of culpability for [the defendant]"). The jury thus may have been "forc[ed] . . . to choose between convicting the defendant of an offense not fully established by the evidence or acquitting, even though the defendant [was] guilty of some offense." *Id.* at 664-665. It is also worth noting that as their verdicts made clear, the jury did not accept all the evidence concerning the defendant's assaultive conduct in the apartment and did not find him guilty of murder in the first degree on a theory of either deliberate premeditation or extreme atrocity or cruelty.

The Commonwealth's second proffered reason for no substantial likelihood of a miscarriage of justice is that defense counsel's decision not to request the instruction on felony-murder in the second degree may have been strategic. We discern no support in the record for the notion that the lack of any request for an instruction was due to tactical decision-making by defense counsel, and the Commonwealth identifies none.

[22]As we have discussed, we find no error in the defendant's remaining convictions of armed home invasion, arson, and violation of abuse prevention orders, and we affirm those convictions.

at the defendant's first trial.[23] See *Commonwealth* v. *Carlino*, 449 Mass. 71, 76-80 (2007). See also *Commonwealth* v. *Zanetti*, 454 Mass. 449, 460-461 (2009). Alternatively, the Commonwealth may choose to agree to entry of a verdict of felony-murder in the second degree.[24] Cf. *Commonwealth* v. *Burton*, 450 Mass. 55, 56 n.1 (2007).

*Conclusion.* This case is remanded to the Superior Court for further proceedings consistent with this opinion.

*So ordered.*

---

[23]If the Commonwealth chooses this option, clearly the offense of felony-murder in the second degree based on arson as the predicate felony must be presented to the jury.

[24]In *Commonwealth* v. *Rego*, 360 Mass. at 396-397, and *Commonwealth* v. *White*, 353 Mass. at 426, this court remanded the cases to the Superior Court for entry of a verdict of guilty of murder in the second degree. In this case, however, we conclude that the interests of justice are better served by permitting the Commonwealth to choose between the alternatives discussed in the text.

If the Commonwealth agrees to entry of a verdict of felony-murder in the second degree, the judge must vacate the defendant's sentence on arson as duplicative. See *Commonwealth* v. *Gunter*, 427 Mass. at 276. Given such a change in the sentencing structure, the judge may, but is not required to, reconsider the sentences imposed on the other crimes of which the defendant stands convicted. Cf. *Commonwealth* v. *McNulty*, 458 Mass. 305, 327 n.18 (2010) (defendant's conviction of murder in first degree reversed; on remand, it would be necessary for defendant to be resentenced on other convictions because those sentences had been ordered to run from and after sentence on murder conviction).