NOTICE:  All slip opinions and orders are subject to formal revision and are superseded by the advance sheets and bound volumes of the Official Reports.  If you find a typographical error or other formal error, please notify the Reporter of Decisions, Supreme Judicial Court, John Adams Courthouse, 1 Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-1030; SJCReporter@sjc.state.ma.us

SJC-11097

COMMONWEALTH  vs.  KENSTON SCOTT.


Plymouth.      March 2, 2015. - September 24, 2015.

Present:  Gants, C.J., Spina, Cordy, Botsford, Duffly, Lenk, & Hines, JJ.


Homicide.  Felony-Murder Rule.  Armed Home Invasion.  Practice, Criminal, Capital case, Postconviction relief, Interlocutory appeal, Double jeopardy.


Indictments found and returned in the Superior Court Department on March 30, 2007.

The cases were tried before Richard J. Chin, J., and a motion for postconviction relief, filed on June 5, 2012, was heard by him.


Chauncey B. Wood for the defendant.
Mary E. Lee, Assistant District Attorney, for the Commonwealth.


DUFFLY, J.  The only issue that is properly before us in this interlocutory appeal, as we shall explain below, is whether the evidence at the defendant's trial was sufficient to warrant a finding of guilty of murder in the first degree based on a

theory of felony-murder, with armed home invasion as the
predicate felony.  Specifically, the question is whether the
Commonwealth presented evidence that would warrant a finding
that the defendant committed two separate assaults, one to
support a conviction of armed home invasion and a separate and
distinct assault that constituted the homicide.  In the absence
of proof of two independent assaults, the evidence would not
support a conviction of felony-murder based on an armed home
invasion.  We hold that the Commonwealth presented sufficient
evidence to warrant a finding of two assaults.

Procedural history.  The defendant was tried and convicted
in the Superior Court, in 2010, on charges (one count each) of
murder in the first degree, armed home invasion, and unlicensed
carrying of a firearm.[1]  The murder conviction was based on a
theory of felony-murder, with armed home invasion as the
predicate felony.[2]  The defendant was sentenced to the mandatory

---

[1] The defendant was tried together with a codefendant, Jaime
Resende.  Resende, like the defendant, was convicted of murder
in the first degree on a theory of felony-murder, with armed
home invasion as the predicate felony.  Resende also was
convicted of armed home invasion and armed assault with intent
to rob.  His conviction of armed home invasion was dismissed as
duplicative.  At a subsequent retrial on the murder charge, he
was found not guilty.  He is not a party to this appeal.

[2] The jury also were given the option of finding armed
robbery as the underlying felony for the felony-murder
conviction.  They did not make a finding one way or the other on
that option.  On the verdict slip for the murder charge, they
placed check marks in the boxes for "guilty of murder in the

term of life in prison without the possibility of parole for the murder, and a concurrent term of from four and one-half to five years for the firearm offense. The armed home invasion indictment was dismissed as duplicative.[3]

The defendant's appeal from his convictions was entered directly in this court in November, 2011, in accordance with G. L. c. 278, § 33E. In June, 2012, while his appeal was pending, he filed in this court a "motion for postconviction relief" that we remanded to the Superior Court for consideration. His motion was focused entirely on the murder conviction and identified three bases for his claim that he was entitled to relief from that conviction: first, that the evidence was insufficient to support the conviction, specifically, that the conviction "was not supported by an independent homicidal act"; second, that the jury should have

---

first degree," "in the commission of a life felony," and "armed home invasion." They left blank the box for "armed robbery." The defendant correctly concedes that this did not amount to an acquittal on that theory. See Commonwealth v. Carlino, 449 Mass. 71, 76-80 (2007).

[3] Immediately after the jury returned their verdicts and were polled and excused, the Commonwealth moved for sentencing. The judge indicated at the outset his intent to dismiss the armed home invasion charge as duplicative in light of the felony-murder conviction based on armed home invasion. See Commonwealth v. Gunter, 427 Mass. 259, 275-276 (1998), S.C., 459 Mass. 480, cert. denied, 132 S. Ct. 218 (2011); Commonwealth v. Raymond, 424 Mass. 382, 396-397 (1997), S.C., 450 Mass. 729 (2008).

been instructed that, in order to find felony-murder, they were required "to find beyond a reasonable doubt that the act establishing the predicate felony was independent from the homicidal act"; and, third, that his trial counsel was ineffective because counsel's "ignorance of the merger doctrine's relevance deprived him of an available and substantial ground of defense."  He accordingly sought a finding of not guilty on the felony-murder conviction or, in the alternative, a new trial on the murder charge.[4]

After an evidentiary hearing on the remanded motion, the trial judge concluded that the evidence at trial was sufficient to support a finding that there had been two separate and distinct assaults, and therefore that the felony-murder conviction was not legally deficient under the so-called merger doctrine.  The judge agreed with the defendant, however, that the jury had not been instructed adequately on the law of felony-murder, specifically, that to convict the defendant of felony-murder based on the armed home invasion, they were required to find two separate and distinct assaults; in other

---

[4] A motion for postconviction relief may, in these circumstances, include both a request for a finding of not guilty and a request for a new trial.  See the second sentence of Mass. R. Crim. P. 25 (b) (2), 378 Mass. 896 (1979); and Mass. R. Crim. P. 30 (b), as appearing in 435 Mass. 1501 (2001).  See also Commonwealth v. Gilbert, 447 Mass. 161, 166-167 (2006); Commonwealth v. Keough, 385 Mass. 314, 316-318 (1982).

words, they were not told that the act that caused the victim's death needed to be separate and distinct from the act that constituted the assault for purposes of the armed home invasion. The judge therefore granted a new trial on the basis of the absence of an appropriate jury instruction.

Despite having been granted a new trial, the defendant appeals from so much of the judge's ruling as determined that the evidence at the first trial was sufficient to support a finding of two separate and distinct assaults, and, consequently, a felony-murder conviction. He presses his claim that he is entitled to a finding of not guilty on the felony-murder charge. The Commonwealth has not appealed from the portion of the order that granted a new trial.

In his brief on appeal, however, the defendant gives relatively short shrift to the single issue that brings him back before the court at this interlocutory juncture -- his challenge to the sufficiency of the evidence for his murder conviction. Instead, he devotes the bulk of his brief to other issues. He focuses primarily and at length on a pretrial order denying his motion to suppress statements he made to the police. He also presses a request he made for an instruction concerning identification that the judge declined to give at his first trial. Finally, he challenges an instruction that the judge gave on accomplice liability. Recognizing that none of these

additional issues is properly before the court at this interlocutory juncture, he nevertheless argues that we should address them now "in the interest of judicial economy."

Discussion.  We decline the defendant's invitation to consider issues other than the sufficiency of the evidence at the first trial to support his murder conviction.  As to that limited issue, the defendant has a right under Massachusetts law to appellate review before he is retried because, if the evidence at the first trial was insufficient to support the conviction, a retrial would be barred by principles of double jeopardy.  See Neverson v. Commonwealth, 406 Mass. 174, 175-176 (1989), and cases cited.  See also Choy v. Commonwealth, 456 Mass. 146, 149-150, cert. denied, 562 U.S. 986 (2010).  Typically this type of issue arises when the first trial ends in a mistrial, but we see no reason why the same principles should not also apply here, where the defendant has been convicted and, while his appeal is pending, he has been granted a new trial.[5]

---

[5] In the typical situation, a defendant who has been tried once and faces a retrial moves to dismiss the indictment before retrial, claiming that the evidence at the first trial was insufficient to warrant a conviction and that a retrial therefore would impermissibly place the defendant in jeopardy for a second time.  If the judge denies the motion to dismiss, the defendant may seek relief from that ruling from a single justice of this court pursuant to G. L. c. 211, § 3.  We have said that the defendant has a right to have his or her double jeopardy claim heard before the retrial.  See Neverson v. Commonwealth, 406 Mass. 174, 175-176 (1989); Berry v. Commonwealth, 393 Mass. 793, 794, 797-798 (1985); Costarelli v.

That said, interlocutory review between trials to determine the sufficiency of the evidence, in order to ensure that a retrial would not violate double jeopardy principles, does not encompass all other interlocutory issues that the defendant raises. The right to interlocutory review in these circumstances exists strictly as a safeguard against double jeopardy. The other issues the defendant raises do not implicate double jeopardy principles. Nor is there any "judicial efficiency" to be gained by encumbering the limited interlocutory review afforded in these circumstances for double jeopardy purposes with multiple other issues that may or may not arise in the same way at the retrial and that, in any event, can be adequately dealt with, if necessary, in the course of the ordinary appellate review that will follow if the defendant is convicted again.[6,7]

---

Commonwealth, 374 Mass. 677, 679, 682-683 (1978). See also Creighton v. Commonwealth, 423 Mass. 1001 (1996). We are satisfied that, in the unusual procedural circumstances of this case, the defendant's motion for postconviction relief, to the extent it sought a finding of not guilty, served essentially the same purpose as a motion to dismiss in the typical situation.

[6] In analogous circumstances (see note 5, supra), when a single justice of this court is faced with a petition pursuant to G. L. c. 211, § 3, the general practice has been to limit the scope of the interlocutory review to the issues that raise double jeopardy claims, and not to turn that limited review into a vehicle for review of all other issues that arose at the first trial.

We now turn to the merits of the sufficiency of the evidence issue. We begin with the elemental principle that, in felony-murder prosecutions, "the conduct which constitutes the felony must be 'separate from the acts of personal violence which constitute a necessary part of the homicide itself.'" Commonwealth v. Gunter, 427 Mass. 259, 272 (1998), S.C., 459 Mass. 480, cert. denied, 132 S. Ct. 218 (2011), quoting Commonwealth v. Quigley, 391 Mass. 461, 466 (1984), cert. denied, 471 U.S. 1115 (1985). See Model Jury Instructions on Homicide 54 (2013) ("The act of violence that is an element of the underlying felony may not be the same act that caused the victim's death"). This requirement ensures that not every assault that results in a death will serve as a basis for murder in the first degree on the theory of felony-murder. Commonwealth v. Kilburn, 438 Mass. 356, 359-360 (2003). Gunter, supra. If an assault that is an element of an underlying felony

---

[7] As stated, the primary issue the defendant argues on appeal is a suppression issue. We note, however, that he did not seek leave to pursue an interlocutory appeal of the suppression ruling at the time it was made, and has not at any time since then. See Mass. R. Crim. P. 15 (a) (2), as appearing in 422 Mass. 1501 (1996). We note also that, before retrial, he may seek to readdress that issue in the trial court, see Commonwealth v. Richmond, 379 Mass. 557, 558 (1980) (stating that judge at retrial has discretion to reconsider suppression ruling made before first trial), and we are mindful of the prosecutor's statement at oral argument that the judge has indicated a willingness to allow the defendant to do so. These considerations reinforce our view that it would be unnecessary and inappropriate to consider the issue at this point.

is not separate and distinct from the assault that results in the death, then the assault is said to merge with the killing, in which case the underlying felony cannot serve as a predicate felony for purposes of the felony-murder doctrine.  Model Jury Instructions on Homicide, supra at 53 n.121 ("Under the merger doctrine, if the only felony committed was the assault upon the victim which resulted in the victim's death, the assault merges with the killing and cannot be relied on by the Commonwealth to support felony-murder").[8,9]

---

[8] Apart from the need for there to be sufficient evidence of two separate assaults, the jury must also be instructed correctly on the doctrine of merger and on the need for them to find two separate assaults.  See Commonwealth v. Bell, 460 Mass. 294, 302-303 (2011); Model Instructions on Homicide 53 n.121 (2013).  See also Commonwealth v. Kilburn, 438 Mass. 356, 361 (2003).  It was on this basis, i.e., the absence of an instruction on merger, that the judge in this case granted the defendant's motion for a new trial.

[9] The underlying felony in this case, armed home invasion, has the following elements:  "that the defendant (1) 'knowingly enter[ed] the dwelling place of another'; (2) 'knowing or having reason to know that one or more persons [were] present within'; (3) 'while armed with a dangerous weapon'; and (4) 'use[d] force or threaten[ed] the imminent use of force upon any person within such dwelling place whether or not injury occur[ed], or intentionally cause[d] any injury to any person within such dwelling place.'  G. L. c. 265, § 18C."  Commonwealth v. Pagan, 440 Mass. 84, 92-93 (2003).  For purposes of the merger analysis, we are concerned with the fourth element.  "[T]he question is whether there was evidence presented that the defendant used force, threatened the imminent use of force, or intentionally injured someone in the [house], independent of the [shooting] of the victim that ultimately caused [his] death." Bell, 460 Mass. at 300.

"Whether a particular felony is sufficiently independent from a killing to support a felony-murder conviction is a question that defies categorical analysis; we therefore review claims of merger on a 'case-by-case basis [and] with reference to specific facts." Kilburn, 438 Mass. at 359, quoting Gunter, 427 Mass. at 275 n.15. See Commonwealth v. Bell, 460 Mass. 294, 300 (2011). We thus turn to the specific facts of this case, focusing mainly on the evidence of events immediately before and during the home invasion and shooting. Because we are examining the legal sufficiency of the evidence, we apply the well-settled and familiar Latimore standard; that is, viewing the evidence in the light most favorable to the Commonwealth, we ask whether the evidence and the inferences that reasonably could be drawn from it were "of sufficient force to bring minds of ordinary intelligence and sagacity to the persuasion of [guilt] beyond a reasonable doubt." Commonwealth v. Latimore, 378 Mass. 671, 676-677 (1979), and cases cited. See Jackson v. Virginia, 443 U.S. 307, 319 (1979) (stating the standard as "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt" [emphasis in original]"), cited with approval in Latimore, supra at 677-678.

The evidence in this case permitted a jury to find that the defendant, his codefendant Jaime Resende, and Vernon Newbury planned to rob a house in Brockton where they believed drugs and money were available. The house was owned by the victim, Nelson Pina, who lived there with his girl friend, Julia Codling. At approximately 12:45 A.M. on November 17, 2006, two men arrived at the house.[10] The victim and Codling were in bed at the time. On hearing the doorbell ring, they went to the front door, which was near the kitchen. Codling testified that she saw, through the window, a young black man wearing a baseball hat standing on the front porch. Through the closed door, the man said that his vehicle had broken down and asked to use the telephone to get assistance. Codling testified that she was suspicious and told the victim not to open the door. The victim got the couple's cordless telephone, however, and their dog from the basement, and told Codling to go back to the bedroom. Codling went to her son's bedroom.

Codling again looked out a window and saw an automobile parked outside with its hazard lights flashing and its hood raised. The vehicle looked new to her, and did not appear to be broken down, which raised her suspicion. She saw the man from

_____

[10] The evidence supported a finding that the two men were the defendant and Resende. The defendant does not challenge the sufficiency of the evidence to warrant such a finding.

the porch walking toward the mailbox, holding the cordless telephone.  Another man got out of the vehicle, donned a black "hoodie," and opened the trunk.  Codling heard the man from the porch say "he's here," which added to her suspicion, and saw him return to the porch.  She then started back down the hall to the front door, intending to tell the victim not to open the door.

Before she reached the front door, Codling heard a struggle at the door.  She then heard four gunshots.  She testified, based on what she heard, that "[i]t was a struggle, like they were fighting.  Like he was trying to close the door and he was trying to push his way in. . . . Right after I heard the struggle, I heard the shots right after."  The two men then fled on foot.  Codling returned to the bedroom, hid under the bed, and called the police on her cellular telephone.[11]

When the police arrived at the scene, they observed the automobile parked in front of the house with its hood raised and hazard lights flashing.  The glass on the front storm door of the house was broken, and the front door was open.  There were bullet holes in the door.  The victim, who was not breathing,

---

[11] A neighbor also testified about the events immediately before and after the shooting.  He stated that he had been sitting on the front steps of his house, which was a few houses away from the victim's house; saw an automobile parked outside the victim's house, with the hazard lights flashing; heard approximately seven gunshots; saw two men standing on the steps of the victim's house, near the front door, firing into the house; and then saw the men flee.

was lying on the floor inside the house, with a .357 Magnum firearm by his legs.  Ballistics evidence indicated that the weapon had been fired once.  The medical examiner who conducted the autopsy testified that the victim died from a single .32 caliber gunshot to his chest.

In addition to the .32 caliber bullet taken from the victim's body, police found a spent .32 caliber bullet in a kitchen cabinet and three .32 caliber discharged casings at the scene, all of which had been fired by a single weapon.  In addition, there was a .22 caliber spent bullet near the front door, another in the hallway, and three spent .22 caliber bullets in the front door.  Seven spent .22 caliber shell casings were found on the walkway outside the house, and bullet furrows were found on the roof of the parked automobile, indicating that shots had been fired from a weapon outside the house, across the roof of the vehicle, toward the house.

Based on this evidence, the motion judge, in a very detailed and thoughtful memorandum of decision on the defendant's motion for postconviction relief (and on Resende's motion for a new trial, which raised numerous additional issues), addressed the sufficiency of the evidence argument as follows:

> "The question is whether, based on the evidence presented at trial, a rational trier of fact could have found beyond a reasonable doubt that the underlying felony,

armed home invasion, was independent of the homicide. Scott and Resende argue that there was no evidence that they used or threatened to use force against Pina in an act separate from the act of shooting and killing him. They contend that the evidence demonstrated a single assault in which the assailants forced their way through the door and simultaneously shot Pina. See Commonwealth v. Stokes, 460 Mass. 311, 314 n.8 (2011) (armed home invasion could not be predicate for felony murder conviction where intruder pointed gun at victim through open door, then fired fatal shot within matter of seconds).

"The only percipient witness, Codling, did not see the shooting but heard the events from a bedroom. She heard a struggle at the door, like Pina was trying to close the door and the assailant was trying to push his way in, immediately followed by several gunshots. The physical evidence at the scene revealed that the storm door was smashed out, with broken glass, the front door appeared to have several bullet holes, and the welcome mat was pushed over the threshold. There were numerous shell casings inside the house near Pina's body, which was located eight to twelve feet from the front door in the kitchen area. There was also a bullet hole in the center island cabinet in the kitchen, a bullet inside the cabinet, and a shell casing on the kitchen floor. There was evidence that Pina fired one shot from the .357 Magnum found between his legs.

"Given this evidence, a rational jury could have found that there were two distinct assaults on Pina: one in which the assailant forced his way through the front door, followed by a firefight inside the house in which Pina was shot. Cf. Commonwealth v. Bell, 460 Mass. at 301-302 . . . ; Commonwealth v. Kilburn, 438 Mass. at 359 . . . . Accordingly, the defendants have not established that their felony murder convictions were legally insufficient based on the merger doctrine."

We agree with the judge's reasoning. Codling's testimony, reasonably understood in the light most favorable to the Commonwealth, permitted a jury to find that there were two separate and distinct assaults on the victim for purposes of a merger analysis. First, there was an assault -- in Codling's

words, "a struggle, like they were fighting" -- as the man on the porch attempted to force his way into the house and the victim tried to close the door on him.  Shots were fired "right after" that.  The second assault, the gunshot that killed the victim, came after the initial struggle to enter the house and, perhaps, after other shots had already been fired.  We also agree with the judge's assessment that the ballistics evidence -- the location of the spent bullets and casings -- further supported a finding of two assaults, one at the door and one inside the house after the intruder had forced his way in.[12]

The sum and substance of the defendant's argument is that his case is similar to Commonwealth v. Stokes, 460 Mass. 311 (2011) (Stokes II), in which we stated that the evidence was insufficient to find two separate assaults for merger purposes. The defendant in that case, like the defendant here, was convicted of felony-murder in the first degree predicated on an armed home invasion.  The named victim in both the murder

---

[12] The judge made this observation in connection with his determination that it was error not to give a suitable instruction on merger.  He also correctly recognized, however, that after hearing the evidence a jury might find a single (merged) assault, and for that reason he stated that he could not "comfortably conclude that if properly instructed on the need to find separate assaults beyond a reasonable doubt, the jury nonetheless would have convicted the defendants of felony murder."  Put another way, he concluded that the evidence -- principally, Codling's testimony and the ballistics evidence -- warranted a finding of separate assaults, but that such a finding was not inevitable.

indictment and the armed home invasion indictment was Cecil Smith, who, at the time of the shooting, was in the apartment of his girl friend, Crystal Rego. There was evidence that Rego opened the door in response to a knock and saw two men. Commonwealth v. Stokes, 440 Mass. 741, 742-743 (2004) (Stokes I).[13] Rego testified that the two men "were 'waving guns . . . [b]ack and forth really fast' and pointing them at her." Id. at 748. Smith, who was sitting on a sofa at the time, was fatally shot. Id. at 742-743. Rego testified that the incident took "a matter of seconds." Id. at 746 n.4.

In Stokes II, we stated that the act of pointing a gun at Smith in the course of shooting him was not separable from the shooting itself for purposes of a merger analysis; it "was part of the shooting that killed him." Stokes II, supra at 314 n.8. "Therefore, under the merger doctrine, the armed home invasion with respect to Smith could not form a predicate felony for a felony-murder conviction." Id.[14]

---

[13] Commonwealth v. Stokes, 440 Mass. 741 (2004) (Stokes I), was the defendant's direct appeal from his convictions. Commonwealth v. Stokes, 460 Mass. 311 (2011) (Stokes II), was his appeal from the denial of a subsequent motion for a new trial.

[14] In Stokes II, for reasons that we need not explain in detail here, it was the defendant, on appeal from the denial of his motion for a new trial, who theorized that "the pointing of guns at Smith . . . was separate from and did not merge with the use of force that killed Smith." Stokes II, 460 Mass. at 314 n.8. The Commonwealth had not proceeded on that theory at trial

Contrary to the defendant's argument, Stokes II is different from the situation here. Although both cases involve an entry and a shooting that occurred within a matter of seconds, that is not dispositive. In Stokes II, we said only that the "pointing of guns" at Smith in the course of shooting him would not have been sufficiently separate and distinct from the shooting itself. Here, by contrast, the evidence warranted a finding that there was both a forcible assault on the victim as the defendant attempted to push the door open and the victim tried to keep it closed (one assault) and, after that, a shooting of the victim (a separate assault). Viewed favorably to the Commonwealth, it was not merely the display of a weapon, the pointing of the weapon at the victim, or the firing of the fatal shot that constituted the initial assault; it was the struggle between the assailant and the defendant -- the assailant's application of physical force as he pushed his way in while the victim tried to keep the door closed -- that supported the armed home invasion conviction. On these facts, the case is more akin to those in which we have determined that an armed home invasion and an ensuing homicide were sufficiently independent under the merger doctrine to support a conviction of felony-murder. See, e.g., Bell, 460 Mass. at 299-303 (finding no merger where defendant came "crashing through the window," "moved at a rapid pace" toward occupants, sprayed gasoline "as

he approached in a manner that reasonably could be characterized as threatening," and then ignited fire that killed victim); Kilburn, 438 Mass. at 358-360 (finding no merger where victim opened door, and defendant "immediately brandished a gun and pushed the victim backward" and fatally shot victim "[a]fter a short interlude").

Finally, we note the defendant's contention, made in a letter filed without leave of court after the briefing was complete, that he may not be retried on a felony-murder theory with armed robbery as the predicate felony. That claim was not part of his motion for postconviction relief; is therefore not properly before us; and, given our conclusion that the defendant may be retried on the felony-murder charge, need not be resolved at this time. See Stokes II, 460 Mass. at 316 & n.10. The defendant raised the subject of armed robbery as a predicate felony for the first time in his reply brief, in which he conceded that the Commonwealth could proceed with the murder prosecution on a felony-murder theory with armed robbery as the predicate. In his subsequent letter, he reversed course and asserted that there had been no evidence that he had in fact taken anything of value from the victim; that he therefore could not be convicted of armed robbery; that at most he could have been convicted on attempted armed robbery; that pursuant to G. L. c. 274, § 6, attempt crimes are not punishable by life in

prison; and therefore that his attempted armed robbery could not support a conviction of felony-murder in the first degree.[15]

We address the point only to say that a prosecution for murder in the first degree on a theory of felony-murder can be premised on a killing that occurs "in the commission or attempted commission of a crime punishable with . . . imprisonment for life."  G. L. c. 265, § 1 (emphasis added). The predicate felony asserted by the Commonwealth in this case was armed robbery, not attempted armed robbery.  If, at the retrial, the Commonwealth adduces sufficient evidence to warrant a finding of armed robbery (a life felony pursuant to G. L. c. 265, § 17), then the jury may return a verdict of felony-murder in the first degree based on a killing that occurred in the attempted commission of that crime, even if they find that the robbery was not completed.  If the Commonwealth does not adduce sufficient evidence to warrant a finding of armed

---

[15] In his opening brief, the defendant asked the court to order the entry of a finding of not guilty based on his argument that, as a result of merger, the armed home invasion could not support the felony-murder conviction.  He said nothing about the armed robbery alternative.  In his reply brief, he acknowledged that the jury could have (albeit did not, see note 2, supra) find felony-murder based on an armed robbery, and therefore stated that he "agree[d] with the Commonwealth that it would be inappropriate to enter a required finding of not guilty on the felony murder count."  In his subsequent letter, he returned to the position that he was "entitled to . . . the entry of a required finding of not guilty."

robbery, a felony-murder charge obviously could not be put to the jury on the basis of armed robbery as the predicate felony.

Conclusion.  For the reasons stated, the judge's order denying the request for a finding of not guilty on the charge of murder in the first degree, with armed home invasion as the predicate felony, is affirmed.

So ordered.