NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

SJC-11931

COMMONWEALTH  vs.  JOHN FREDETTE.


Worcester.      November 7, 2017. - July 13, 2018.

Present:  Gants, C.J., Gaziano, Lowy, Budd, Cypher, &
Kafker, JJ.


Homicide.  Felony-Murder Rule.  Kidnapping.



Indictment found and returned in the Superior Court
Department on February 15, 2012.

The case was tried before Janet Kenton-Walker, J., and a
motion for a new trial, filed on September 23, 2015, was heard
by her.


Ellyn H. Lazar-Moore, Assistant District Attorney, for the
Commonwealth.
Joseph A. Hanofee for the defendant.


LOWY, J.  In 2014, a Superior Court jury convicted the

defendant, John Fredette, of murder in the first degree on a

theory of felony-murder, with aggravated kidnapping as the

predicate felony.[1]  The jury based their finding of aggravated kidnapping on the third paragraph of the current version of the kidnapping statute, which punishes a kidnapping committed "while armed with a dangerous weapon and inflict[ing] serious bodily injury thereby upon another person."  G. L. c. 265, § 26, third par.

The defendant appealed and, after his appeal was entered in this court, he filed a motion for a new trial, arguing that the trial judge erred in not providing a merger doctrine instruction to the jury sua sponte.  As discussed infra, the merger doctrine limits the application of the felony-murder rule by requiring the Commonwealth to prove that the defendant committed or attempted to commit a felony that is independent of the conduct necessary to cause the victim's death.  This prevents every assault that results in a homicide from serving as the predicate for felony-murder.  The defendant claimed that because a single act of violence (a shooting) caused the victim's death and satisfied an element of the aggravated kidnapping, the felony of aggravated kidnapping merged with the killing and could not serve as the predicate for felony-murder.  The motion judge, who was also the trial judge, agreed.  The judge concluded that a new trial was required because the omission of an instruction on

---

[1] The jury did not find the defendant guilty of murder in the first degree on a theory of deliberate premeditation.

merger created a substantial risk of a miscarriage of justice. The Commonwealth appealed from that ruling, which is the matter presently before us.[2]  We conclude that because the underlying predicate felony -- kidnapping -- has an intent or purpose separate and distinct from the act causing physical injury or death, aggravated kidnapping is sufficiently independent of the resulting homicide and, therefore, the merger doctrine is inapplicable.  Accordingly, the omission of a merger instruction was not an error, and the defendant's motion for a new trial should not have been granted on that ground.

In the course of deciding the Commonwealth's appeal, however, we discovered that the current version of the kidnapping statute, G. L. c. 265, § 26, under which the defendant was prosecuted, is materially different from the version that was in effect when the killing occurred in 1994. Specifically, in 1994, G. L. c. 265, § 26, did not include the form of aggravated kidnapping that the Commonwealth relied on as the predicate for murder in the first degree on a theory of felony-murder (i.e., kidnapping aggravated by being armed with a dangerous weapon and inflicting serious bodily injury on the

---

[2] At our request, the parties submitted additional briefing concerning whether the merger doctrine is applicable to the predicate felony of aggravated kidnapping.

victim).[3]  Moreover, G. L. c. 265, § 26, as it existed in 1994, carried a maximum sentence of ten years in prison and, as it relates to the defendant's case, could not have supported a conviction of murder in the first degree on a theory of felony-murder because it was not a felony punishable by up to life imprisonment (i.e., a life felony).  The Commonwealth now acknowledges that, because of this error, the defendant's conviction of murder in the first degree cannot stand. Accordingly, we also vacate the defendant's conviction of murder in the first degree and remand the case to the trial judge to determine whether, on this record, a conviction of murder in the second degree should enter or whether the defendant is entitled to a new trial.[4]

Background.  1.  Facts.  We summarize the facts the jury could have found as set forth by the judge in her written decision on the defendant's motion, supplemented with uncontroverted testimony from trial.  On the evening of February 15, 1994, the victim walked out of a bar in Worcester, leaving

_____

[3] At our request, the parties submitted additional briefing concerning whether this discrepancy constituted an ex post facto violation and, if so, what would be the appropriate disposition for the defendant's appeal.

[4] If the Superior Court judge determines that a new trial is warranted, we note that, as discussed in note 9, infra, Commonwealth v. Brown, 477 Mass. 805, 807 (2017), eliminated felony-murder in the second degree as a theory of murder for cases tried after Brown was decided.

behind his favorite Boston Celtics jacket, house keys, a package of cigarettes, and an unfinished beer.  He was never seen again.  The victim's disappearance remained unsolved for eighteen years.  On February 15, 2012, a Worcester County grand jury returned an indictment charging the defendant with murder.  Matteo Trotto and Elias Samia, two of the defendant's cohorts in his illegal drug operation, were also indicted for the murder.[5]

The defendant had been arrested for trafficking in cocaine a few months before the victim disappeared, following an undercover investigation into the defendant's drug operation.  The defendant and Trotto believed that the victim might have been the informant who provided the police with information leading to the defendant's arrest.  To evade conviction, the defendant and Trotto concocted a scheme to have the victim testify on the defendant's behalf and offer an exculpatory, perjured story.  According to this plan, the victim would testify that he was the confidential informant who provided the information to the police that established probable cause to arrest the defendant, and explain that the information he provided was false.  To ensure that the victim would testify, the defendant and Trotto gave him copious amounts of cocaine, while also threatening his life.

---

[5] Matteo Trotto and Elias Samia were tried separately and were both convicted.  Their appeals are currently pending.

On the day of the defendant's trial, the victim never appeared in court to testify. As a result, on February 14, 1994, the defendant pleaded guilty to a reduced offense. He was sentenced to a State prison sentence, but execution of that sentence was stayed.

On the evening of February 15, 1994, the victim was sitting in the bar when Trotto appeared, coaxed the victim outside, and ushered him into a motor vehicle occupied by the defendant and Samia. Soon after the victim entered the vehicle, the defendant and Samia began severely beating him. In the course of the beating, Samia shot and killed the victim. The defendant, Samia, and Trotto buried the victim's body in a shallow grave. The victim's body was never recovered.

2. The jury instructions. Insofar as relevant here, the judge instructed the jury on murder in the first degree as a joint venturer on the theories of deliberate premeditation and felony-murder, with aggravated kidnapping as the predicate felony.[6] Specifically, she instructed the jury that the Commonwealth had the burden to prove beyond a reasonable doubt that

---

[6] Although the defendant was not charged separately with aggravated kidnapping, likely because the statute of limitations had expired, the Commonwealth relied on it as the predicate felony for the prosecution of murder in the first degree on a theory of felony-murder.

> "the defendant committed the kidnapping while armed with a dangerous weapon and inflicted serious bodily injury against [the victim], or knowingly participated with Matteo Trotto and Elias Samia in doing so, with the knowledge that Elias Samia possessed a weapon and that the defendant knew Elias Samia would or could use that weapon in the commission of the crime."

See G. L. c. 265, § 26, third par.[7]

The judge also instructed the jury that the Commonwealth had to prove beyond a reasonable doubt that the defendant committed the kidnapping while armed with a dangerous weapon and that a firearm was a dangerous weapon.[8] The defendant did not request a merger instruction, and the judge did not provide such an instruction sua sponte. The jury convicted the defendant of murder in the first degree on a theory of felony-murder.

3. The defendant's motion for a new trial. Although the defendant did not request a merger instruction at trial, he contended in his motion for a new trial that the trial judge's

---

[7] The Commonwealth did not request an instruction on aggravated kidnapping under G. L. c. 265, § 26, second par., and such an instruction was not provided. In contrast to aggravated kidnapping under the third paragraph of G. L. c. 265, § 26, aggravated kidnapping under the second paragraph of G. L. c. 265, § 26, would have been required the Commonwealth to prove beyond a reasonable doubt only that the defendant committed a kidnapping "while armed with a firearm, rifle, shotgun, machine gun or assault weapon," or knowing that Elias Samia was so armed.

[8] The jury also were instructed on murder in the second degree as a lesser included offense of murder in the first degree committed by deliberate premeditation and felony-murder in the second degree as a lesser included offense of felony-murder in the first degree.

failure to provide the instruction, sua sponte, created a substantial risk of a miscarriage of justice.  Specifically, he claimed that because a single act of violence (the shooting) caused the victim's death and thus completed an element of aggravated kidnapping (inflicting serious bodily injury), the felony of aggravated kidnapping merged with the killing and could not have served as the predicate for felony-murder.  As mentioned, the judge agreed, and the Commonwealth appealed from that ruling.

Discussion.  We review the disposition of a motion for a new trial to determine whether there has been "a significant error of law or other abuse of discretion."  Commonwealth v. Grace, 397 Mass. 303, 307 (1986).  We conclude that the judge erred in granting the defendant's motion for a new trial because the intent or purpose underlying the felony of aggravated kidnapping was separate and distinct from the assault that resulted in the homicide; thus, the merger doctrine was inapplicable.

Before we explain the reasons for our conclusion, we reiterate the analytical framework required to determine whether a felony merges with a subsequent killing, as it applies to cases tried prior to Commonwealth v. Brown, 477 Mass. 805, 807 (2017), where this court prospectively abolished the concept of

constructive malice, which in turn eliminated our common-law

felony-murder rule as an independent theory of murder.[9]

_____

[9] After Brown, 477 Mass. at 807, "felony-murder" serves only to enhance a murder occurring during the commission of a life felony to a murder in the first degree. Id. at 832 (Gants, C.J., concurring). Although we need not decide whether this change renders the merger doctrine obsolete, Brown eliminated the perceived injustice of the felony-murder rule that the merger doctrine was designed to mitigate. Id. at 831 (Gants, C.J., concurring). In Brown, we also observed that Michigan had already abolished the felony-murder rule under its common law. Id. at 833 (Gants, C.J., concurring), citing Commonwealth v. Tejeda, 473 Mass. 269, 277 n.9 (2015) (discussing People v. Aaron, 409 Mich. 672, 727-729 [1980]). We note that following the abolition of the felony-murder rule in Michigan, appellate courts in that State have rejected the claim that the merger doctrine is still applicable. See People v. Magyar, 250 Mich. App. 408, 411-412 (2002); People v. Jones, 209 Mich. App. 212, 214-215 (1995). We did not address this issue in Brown and we do not do so here because the merger doctrine is inapplicable to aggravated kidnapping.

Were we to assume, without deciding, that the merger doctrine is generally obsolete after Brown, a vestige of the doctrine would nevertheless apply to certain cases. Where a murder occurred prior to our decision in Brown, but the defendant's trial were to begin after our decision in Brown, and the Commonwealth were to proceed on a theory of felony-murder where the predicate felony did not have an independent purpose from the intent to cause physical injury or death (e.g., armed assault in a dwelling), the jury should be instructed on the merger doctrine -- i.e., that the conduct constituting the felony must be separate from the acts of personal violence necessary to commit the killing. A merger instruction in those circumstances would protect against possible disparate outcomes, e.g., if the case had been tried prior to our decision in Brown. If, after having been provided the merger instruction, the jury should conclude that the felony merged with the killing, the defendant could be found guilty of, at most, murder in the second degree (assuming there were no other theories of murder in the first degree presented by the Commonwealth). In those circumstances, the defendant could be found guilty only of murder in the second degree, but not on a felony-murder theory because Brown eliminated felony-murder in the second degree.

1.  The merger doctrine.  "The effect of the felony-murder rule is to substitute the intent to commit the underlying felony for the malice aforethought required for murder.  Thus, the rule is one of 'constructive malice.'"  Commonwealth v. Gunter, 427 Mass. 259, 271 (1998), quoting Commonwealth v. Matchett, 386 Mass. 492, 502 (1982).  The merger doctrine functions as a constraint on the application of the felony-murder rule by limiting the circumstances in which a felony may serve as the predicate for felony-murder.  See Commonwealth v. Morin, 478 Mass. 415, 430 (2017).  Specifically, the doctrine requires the Commonwealth to prove that the defendant committed or attempted to commit a felony that is independent of the act necessary for the killing.  See Commonwealth v. Holley, 478 Mass. 508, 519 (2017); Morin, supra.  This requirement ensures that not every assault that results in a death may serve as the predicate for felony-murder.  Morin, supra.  Without the merger doctrine, the distinction between murder and other homicides would be rendered meaningless because all homicides could be enhanced to murder on the theory of felony-murder with the assaultive conduct preceding the homicide serving as the predicate felony.  Id., quoting Gunter, 427 Mass. at 272.  See Morin, supra, citing Crump & Crump, In Defense of the Felony Murder Doctrine, 8 Harv. J.L. & Pub. Pol'y 359, 377 (1985) (merger doctrine prevents prosecution from bootstrapping lesser-included homicide offenses

into murder). For this reason, "where the only felony committed [apart from the murder itself] was the assault upon the victim which resulted in the death of the victim, the assault merge[s] with the killing and [cannot] be relied upon by the state as an ingredient of a 'felony murder.'" Commonwealth v. Quigley, 391 Mass. 461, 466 (1984), cert. denied, 471 U.S. 1115 (1985), quoting State v. Branch, 244 Or. 97, 100 (1966).

As detailed infra, determining whether a predicate felony merges with the homicide depends on the resolution of two distinct inquiries. First, if the underlying predicate felony has an intent or purpose separate and distinct from the act causing physical injury or death, the merger doctrine is inapplicable, and the felony may serve as the predicate for felony-murder; no further analysis is required. See Holley, 478 Mass. at 519-520 ("intent to steal does not cause a homicide"); Morin, 478 Mass. at 431. If the felony does not have an independent intent or purpose, the second inquiry is whether the conduct constituting the felony is separate and distinct from the conduct that caused the homicide itself. See Commonwealth v. Kilburn, 438 Mass. 356, 358-359 (2003) (armed assault in dwelling). If the conduct is distinct, the felony does not merge with the homicide. See id. at 359. However, where the underlying felony does not have an independent intent or purpose, and the same act that is necessary to complete the

felony also causes the homicide, the felony merges with the homicide and cannot serve as the predicate for felony-murder. Id.

a. First inquiry:  whether there is an independent felonious purpose.  Determining whether a felony is capable of merging with the resulting homicide appears to be a source of confusion in our case law.  Compare Commonwealth v. Christian, 430 Mass. 552, 556-557 (2000) (analyzing intent of underlying felony, armed robbery, to determine whether merger applies), overruled on other grounds by Commonwealth v. Paulding, 438 Mass. 1 (2002), with Commonwealth v. Bell, 460 Mass. 294, 299-303 (2011) (analyzing assaultive element of felony, armed home invasion, to determine whether merger applies).  See Commonwealth v. Lopez, 87 Mass. App. Ct. 642, 646 (2015) (analyzing whether and how analytical frameworks set forth in Christian, supra, and Bell, supra, can coexist).  We emphasize that the merger doctrine analysis must always begin with resolving the first inquiry -- whether the underlying felony is capable of merging with the killing.  See Holley, 478 Mass. at 520, citing Morin, 478 Mass. at 430.  The merger doctrine is inapplicable to felonies that have an underlying intent or purpose separate and distinct from the intent to cause physical injury or death.  Holley, supra.  Morin, supra.  See State v. Marquez, 376 P.3d 815, 823 (N.M. 2016) ("there must be a

felonious purpose that is independent from the purpose of endangering the physical health of the victim before the dangerous felony can be used" as predicate for felony-murder).

Determining whether a felony has an intent or purpose separate and distinct from the act causing physical injury or death requires an objective analysis of the predicate felony, which is not influenced by the defendant's subjective motivation or intent to commit the underlying felony. See id. ("a dangerous felony may only serve as a predicate to felony murder when the elements of any form of the predicate felony -- looked at in the abstract -- require a felonious purpose independent from the purpose of endangering the physical health of the victim"). See also Holley, 478 Mass. at 520; Christian, 430 Mass. at 556-557. We further emphasize that this analysis focuses on the intent or purpose underlying the predicate felony, irrespective of any assaultive element contained in that felony. See Christian, supra (armed robbery does not merge with killing because underlying purpose of armed robbery is to steal, which is independent of intent to harm victim); Commonwealth v. Wade, 428 Mass. 147, 153 (1998), S.C., 467 Mass. 496 (2014) and 475 Mass. 54 (2016) (aggravated rape does not merge with killing because underlying purpose of rape is independent of assault causing serious bodily injury and death). We examine the purpose of the underlying predicate felony, separate from any

assaultive element, because it is the intent to commit the underlying felony, not the intent to commit an assault, that "serves as the substitute for the malice requirement of murder." Morin, 478 Mass. at 431, quoting Christian, supra at 556. See Commonwealth v. Prater, 431 Mass. 86, 96-97 (2000) ("The focus of the analysis is on the substitution of the intent, not on the number of assaults"). Accordingly, a felony with an independent purpose, despite containing an element of assault, is not capable of merging with the resulting killing. See Morin, supra. This analytical framework illustrates why we have long held that "rape, arson, robbery and burglary are sufficiently independent of the homicide, . . . [but] aggravated battery toward the deceased will not do for felony murder" (citation omitted). Quigley, 391 Mass. at 466.

The felony of armed robbery, which this court has analyzed on several occasions, further elucidates the importance of analyzing the intent or purpose of the underlying felony to determine whether the merger doctrine is applicable. See Holley, 478 Mass. at 520; Morin, 478 Mass. at 430-431; Prater, 431 Mass. at 96-97; Christian, 430 Mass. at 556. We have concluded that the crime of armed robbery is independent of any killing that results in the course of the commission or attempted commission of that crime because "it is the intent to steal, rather than the intent to assault, which is substituted

for malice[, and because] intent to steal does not cause a homicide, the armed robbery does not merge with the killing." Holley, supra. See Christian, supra (robbery is "[1] stealing or taking of personal property of another [2] by force and violence, or by assault and putting in fear," and "[r]obbery is enhanced to an armed robbery when a defendant is armed"). Even where a single act of violence not only completes the armed robbery but also causes the victim's death (e.g., a single gunshot), armed robbery does not merge with the killing because the intent or purpose underlying an armed robbery is the intent to steal, not to cause physical injury or death, regardless of the eventual outcome of that crime. See Christian, supra at 557. For this reason, "[w]e can envision no situation in which an armed robbery would not support a conviction of felony-murder." Id. at 556.

We do not deviate from analyzing the intent or purpose of the underlying felony where the crime at issue is an aggravated felony and the aggravating element embodies assaultive conduct. See Wade, 428 Mass. at 152-153 (rape enhanced to aggravated rape where committed during commission of kidnapping or otherwise resulted in serious bodily injury to victim). Although the aggravated form of a felony may enhance that crime to a life felony, the assaultive component "does not negate the intent to commit the [underlying felony] that is the substitute for the

malice requirement of murder." Id. at 153. See Christian, 430 Mass. at 556 (although "[r]obbery is enhanced to an armed robbery when a defendant is armed," that does not change underlying purpose of felony, i.e., to steal). For example, in Wade, supra, the predicate felony was aggravated rape, where the pertinent aggravating factor was the infliction of serious bodily injury on the victim. We concluded that the crime of aggravated rape did not merge because it was the "intent to commit the rape, not the intent to inflict serious bodily harm, [that] was the substitute for the malice requirement of murder." Id. at 153. Although the victim died as a result of the serious bodily injury she sustained during the rape, we concluded that the crime of aggravated rape did not implicate the merger doctrine because the intent to rape was separate and distinct from the intent to cause physical injury or death. Id.

Thus, where a predicate offense has an independent felonious purpose separate and distinct from the intent to cause physical injury or death, the merger doctrine is inapplicable and the felony may serve as the predicate for felony murder.

b. Second inquiry: whether the conduct constituting the felony was separate from the conduct necessary to cause the homicide. If the underlying predicate felony does not have an independent felonious purpose, the court must then undertake a second step in the analysis, to determine whether the felony

merges with the killing as a matter of fact.  See, e.g.,
Kilburn, 438 Mass. at 359 (armed assault in dwelling with intent
to commit felony capable of merging with resulting killing).

Not all felonies lacking an independent felonious purpose
necessarily merge with the resulting homicide.  See id. at 358-
360.  A felony does not merge with the killing if "the conduct
which constitutes the felony [is] 'separate from the acts of
personal violence which constitute a necessary part of the
homicide itself.'"  Gunter, 427 Mass. at 272, quoting Quigley,
391 Mass at 466.  Otherwise stated, the predicate felony does
not merge if the assaultive conduct that constituted the felony
was separate and distinct from the act of violence necessary to
complete the killing.  See Kilburn, 438 Mass. at 358-359 (first
instance of armed assault in dwelling completed before assault
that killed victim).  Because this is a fact-dependent inquiry,
we review this portion of the analysis "on a case-by-case basis
[and] with reference to specific facts."  Id. at 359, quoting
Gunter, 427 Mass. at 275 n.15.  See Commonwealth v. Scott, 472
Mass. 815, 820 (2015), quoting Kilburn, supra at 359 (second
step of analysis "defies categorical analysis" and requires
examination of particular facts of each case).

We have determined that armed assault in a dwelling, a
crime without an independent felonious purpose from the intent
to cause physical injury or death, may serve as the predicate

for felony-murder so long as the conduct that constitutes the armed assault (the underlying felony) is separate and distinct from the conduct necessary to kill the victim. Kilburn, 438 Mass. at 358-359. In the Kilburn case, the defendant, the shooter's coventurer, was convicted of murder in the first degree on a theory of felony-murder with armed assault in a dwelling as the predicate felony. Id. at 358. We observed that there were two discrete assaults. The first assault occurred when one assailant opened the victim's apartment door, brandished a firearm, and pushed the victim backward into the apartment. Id. "After a short interlude, during which the gunman ordered . . . the victim about the apartment, the gunman shot the victim in the back of the head, thus violating [the armed assault in a dwelling statute] a second time." Id. We concluded that although the second assault (the fatal shooting) merged with the killing, the first did not because the first assault was completed when the gunman opened the door, brandished a firearm, and pushed the victim backward. Kilburn, supra at 358-359. Because the first violation of the armed assault in a dwelling statute was accomplished by separate and distinct acts from the conduct necessary to cause the killing, the first assault did not merge with the killing and could serve as the predicate for felony-murder. Id. at 359 (victim "died of a gunshot wound; he did not die of fright"). Accord

Commonwealth v. Scott, 472 Mass. at 823-825 (no merger where assailant's struggle with victim at front door constituted first assault, and subsequent gunshot that killed victim was second independent assault). Contrast Commonwealth v. Stokes, 460 Mass. 311, 314 n.8 (2011) (armed home invasion could not serve as predicate felony because act of pointing gun at victim in course of shooting him was not sufficiently separate from shooting itself).

In sum, where the felony at issue does not have an independent purpose from the intent to cause bodily injury or death, the court must examine whether the act that constituted the felony is separate and distinct from the act causing the homicide. If the underlying felony was separate and distinct from the homicide, the felony does not merge and may serve as the predicate for felony-murder. In contrast, if the same act accomplished both the felony and the killing, the felony merges with the killing.

2. The motion for a new trial: whether aggravated kidnapping implicates the merger doctrine. In this case, the predicate crime of kidnapping required the Commonwealth to prove beyond a reasonable doubt that the defendant, "without lawful authority, forcibly or secretly confine[d] or imprison[ed] another person within this commonwealth against his will." G. L. c. 265, § 26, first par. Kidnapping itself is not a life

felony, however, and thus could not have served as the predicate for a finding of felony-murder in the first degree. But kidnapping becomes aggravated kidnapping, which is a life felony, when the defendant commits the kidnapping, among other things, "while armed with a firearm, rifle, shotgun, machine gun or assault weapon," § 26, second par., or "while armed with a dangerous weapon and inflicts serious bodily injury thereby upon another person," § 26, third par. Neither form of aggravated kidnapping implicates merger because the "essential element of kidnapping is not the level of violence [or assaultive element] but rather the defendant's forcible or secret confinement or imprisonment of the victim against his will." Commonwealth v. Oberle, 476 Mass. 539, 548 (2017), quoting Commonwealth v. Robinson, 48 Mass. App. Ct. 329, 334 (1999). Given that the jury here were instructed only on aggravated kidnapping under the third paragraph of G. L. c. 265, § 26, the element that enhanced kidnapping to a life felony (being armed with a dangerous weapon and inflicting serious bodily injury) did not negate the intent to commit the kidnapping that is the substitute for the malice requirement of murder. The intent to commit the kidnapping (confining or imprisoning another person against his or her will), not the infliction of serious bodily injury, is what substituted for the malice requirement of murder. See Wade, 428 Mass. at 153. Because aggravated

kidnapping involves an intent independent from the killing, neither form of aggravated kidnapping implicates the merger doctrine.[10]  Accordingly, the judge's order allowing the motion for new trial must be reversed.

3.  Defendant's improper conviction of murder in the first degree on a theory of felony-murder based on aggravated kidnapping.  As discussed supra, the Commonwealth relied on aggravated kidnapping as the predicate felony to support the defendant's conviction of murder in the first degree based on a theory of felony-murder.  The Commonwealth proved aggravated kidnapping under G. L. c. 265, § 26, third par. (i.e., kidnapping "while armed with a dangerous weapon and inflict[ing] serious bodily injury thereby upon another person"), as the statute existed at the time of the defendant's trial in 2014.  However, this theory of aggravated kidnapping (G. L. c. 265, § 26, third par.) did not exist when the defendant committed the killing in 1994.  An amendment in 1998 added what are now the second and third paragraphs of § 26.  Compare G. L. c. 265, § 26, as amended through St. 1979, c. 465, § 1, with G. L. c. 265, § 26, as amended by St. 1998, c. 180, § 63.  Thus, it was not until 1998 that either form of aggravated kidnapping

---

[10] Because the crime of aggravated kidnapping has an independent felonious purpose from the intent to cause physical injury or death, the merger doctrine is inapplicable and we need not proceed to the second inquiry.

discussed herein first appeared in the statute.  G. L. c. 265, § 26, as amended by St. 1998, c. 180, § 63.  Simply stated, the defendant's conviction of murder in the first degree was based on a predicate felony that did not exist when the killing took place in 1994.  Kidnapping under G. L. c. 265, § 26, as it existed in 1994, could not serve as the predicate for a murder in the first degree conviction because kidnapping by itself, i.e., absent any aggravated form, was not then and is not now a life felony and carries a maximum sentence of only ten years in State prison.[11]  See Commonwealth v. Licciardi, 387 Mass. 670, 673 n.1 (1982) (analyzing substantially similar version of G. L. c. 265, § 26, predating inclusion of aggravated forms of kidnapping in second and third paragraphs of statute).

We raised this concern on our own initiative, while the Commonwealth's appeal from the order granting a new trial was under advisement, and we asked the parties to brief it.  The Commonwealth concedes that the defendant's conviction of murder in the first degree cannot stand.  The defendant's conviction is based on a predicate felony that did not exist when the defendant committed the killing in 1994.  Since the defendant

---

[11] The Commonwealth did not proceed, and on these facts could not have proceeded, at trial on a theory that the defendant kidnapped the victim "with intent to extort money or other valuable[s]," which was an offense punishable by up to life imprisonment at the time the offense was committed, see G. L. c. 265, § 26, as amended through St. 1979, c. 465, § 1, and which was retained in the current version of the statute.

committed the crime in 1994, applying G. L. c. 265, § 26, third par., as it existed in 2014, would give ex post facto effect to the subsequent law.  See Commonwealth v. Cory, 454 Mass. 559, 564 (2009), quoting Commonwealth v. Bargeron, 402 Mass. 589, 590 (1988) ("An ex post facto law is . . . one that 'changes the punishment, and inflicts a greater punishment, than the law annexed to the crime, when committed'").  See also Johnson v. United States, 529 U.S. 694, 699 (2000) (challenged law must operate retroactively, i.e., it must apply to conduct completed before its enactment, and it must raise penalty from whatever law provided when defendant acted).

We also asked the parties to brief the question of how best to dispose of the matter if we were to conclude, as we now do, that the conviction of murder in the first degree cannot stand. After careful consideration of their suggestions, we conclude that the best course is to vacate the verdict of murder in the first degree at this time, as if we had discovered the issue in the course of considering the defendant's direct appeal pursuant to G. L. c. 278, § 33E.  It makes little sense, and would require an unnecessary expenditure of time and resources, to wait for the direct appeal to be briefed and argued before we reach what the parties now agree is this inevitable result.  We thus remand the case to the trial judge, who is in the best position to determine the appropriate next step.  She may order

the entry of a finding of a lesser degree of guilt, i.e., murder in the second degree based on the predicate felony of kidnapping as it existed at the time of the homicide, if the record supports it, or she may grant a new trial if that is necessary and appropriate in the circumstances. Neither side will be prejudiced by this approach. The defendant, who has not yet briefed his direct appeal in this court, will be able to pursue a direct appeal to the Appeals Court if the judge orders the entry of a verdict of murder in the second degree, and the Commonwealth may of course appeal to the Appeals Court if the judge orders a new trial.

Conclusion. The order granting a new trial on the basis of merger is reversed, and an order shall enter in the Superior Court denying the motion on that ground. Further, as discussed, we vacate the defendant's conviction of murder in the first degree, because it was predicated on a theory of aggravated kidnapping (G. L. c. 265, § 26, third par.) that did not exist at the time of the homicide. We remand the case to the trial judge to determine whether a finding of murder in the second degree is supported by the record and should be entered, or whether a new trial is necessary and appropriate in these circumstances. The docket of the defendant's direct appeal in this court will be closed, and each side will be free to proceed

in the Appeals Court with any appeal it may have from the judge's order on remand.

<u>So ordered</u>.