NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

SJC-11126


COMMONWEALTH  vs.  PHAP BUTH.



Essex.     March 9, 2018. - July 17, 2018.

Present:  Gants, C.J., Gaziano, Budd, & Kafker, JJ.


Homicide.  Felony-Murder Rule.  Armed Home Invasion.  Joint
    Enterprise.  Evidence, Joint venturer.



Indictments found and returned in the Superior Court
Department on September 7, 2005.

The cases were tried before Richard E. Welch, III, J., and
a motion for a new trial, filed on June 17, 2015, was heard by
him.


John H. Cunha, Jr. (Charles Allan Hope also present) for
the defendant.
Catherine L. Semel, Assistant District Attorney, for the
Commonwealth.


BUDD, J.  A jury in the Superior Court convicted the

defendant, Phap Buth, on two indictments charging murder in the

first degree for the shooting deaths of Amy Dumas and her

father, Robert Finnerty.  Both murder indictments were based on

a theory of joint venture felony-murder, with armed home

invasion as the predicate offense. On appeal, the defendant argues that, because there was insufficient evidence to show that he knew that his companions were armed, his convictions must be overturned. He also claims that the merger doctrine prevents his convictions and that the felony-murder doctrine should be abolished.[1] We affirm and decline to grant extraordinary relief pursuant to G. L. c. 278, § 33E.

Background. We summarize the facts the jury could have found, reserving certain details for discussion of the issues.

1. The crime. Robert and Judith Finnerty lived with their sixteen year old daughter, Amy Dumas, in Lynn. After suffering a stroke, Robert was partially paralyzed and unable to work.[2] Judith left her full-time job to care for Robert, and began selling marijuana to family, friends, and "people that [she] knew" to earn money.

Shortly after 11 P.M. on May 16, 2005, the defendant knocked at the Finnertys' door, seeking to purchase marijuana. Although Judith had sold marijuana to the defendant on other occasions, she informed him that she no longer sold it, but

---

[1] Although the defendant also appeals from the denial of his motion for a new trial, his appellate brief states that he is no longer pursuing the argument he raised in that motion.

[2] Because Robert and Judith Finnerty share a last name, we refer to them by their first names.

would "do it this one time." The defendant entered the apartment, purchased a bag of marijuana, and left.

Within seconds, the defendant returned to the Finnertys' door and knocked again. Judith opened the door partway to speak to the defendant, who asked to purchase additional marijuana. When she refused, he swung open her door and stepped back out of the way, making room for two other individuals wearing black clothes, black gloves, and ski masks to enter. As Judith ran toward her husband to protect him, she fell to the floor. When she looked up, she saw the assailants standing with guns in their hands. She began screaming for help. Robert raised his walker to defend himself and was shot once in the chest. Dumas came running out of her bedroom and was shot twice in the back.

The intruders fled after shooting the victims, and Judith ran to the door to yell for help. She saw the defendant standing at the end of the driveway, looking back and forth. When the defendant saw Judith, he "smirk[ed]." Law enforcement soon arrived at the scene; Robert and Dumas were pronounced dead a short time later.

2. The investigation. A neighbor telephoned 911, alerting law enforcement to the crimes. Based on the information that Judith related to one of the officers, other officers canvassed the neighborhood, looking for an individual matching the defendant's description, as well as the two assailants in black.

Within fifteen minutes of a broadcast description of the defendant, police located him approximately one-quarter mile from the Finnertys' apartment, and Judith identified him as the unmasked perpetrator. Nearby, police also located Pytou Heang and Chon Son, the two individuals who were identified as the armed assailants.[3] Pytou Heang was outside an apartment building blocks away from the crime scene, and Chon Son was in the stairwell of that building. On the building's third-floor landing, police recovered a baseball hat, two firearms, gloves, and a bandana.

Discussion. The defendant raises three claims of error: first, that there was insufficient evidence to support his convictions; second, that the merger doctrine precludes his convictions; and third, that the felony-murder doctrine is unconstitutional. We address each in turn.

1. Sufficiency of evidence. In order for a jury to find a defendant guilty of joint venture felony-murder with armed home invasion as the predicate felony, the Commonwealth is required to establish beyond a reasonable doubt that the defendant

---

[3] Pytou Heang was convicted on two indictments charging murder in the first degree and one indictment each charging armed home invasion and unlawfully carrying a firearm. Commonwealth v. Pytou Heang, 458 Mass. 827, 828 (2011). Chon Son pleaded guilty on two indictments charging murder in the second degree and one indictment each charging armed home invasion and carrying a firearm without a license. Id. at 830 n.8.

participated in committing armed home invasion as a joint
venturer and that the victims were killed in furtherance of that
crime. See, e.g., Commonwealth v. Tejeda, 473 Mass. 269, 272-
273 (2015). To prove a joint venture, the Commonwealth is
required to show that the defendant knowingly participated in
the commission of the crime charged with the intent required for
the offense.[4] Commonwealth v. Kilburn, 426 Mass. 31, 34 (1997).

The defendant focuses our attention on the sufficiency of
the evidence of his participation in the armed home invasion as
a joint venturer.[5] To succeed in a claim of insufficient
evidence, the defendant must show that, viewing the evidence in
the light most favorable to the Commonwealth, no rational trier
of fact could have found the essential elements of the crime

---

[4] At trial, the judge instructed the jury that to prove a
defendant guilty of a joint venture, the Commonwealth had to
show that the defendant (1) was "physically present at the scene
of the crime," (2) had "knowledge that another intended to
commit the crime," and (3) had "agreed to participate in the
crime." In Commonwealth v. Zanetti, 454 Mass. 449, 455 (2009),
we articulated a modified test for joint venture intended to
provide clearer guidance. See Commonwealth v. Miranda, 474
Mass. 1008, 1008-1009 (2016).

[5] This specific claim was raised during the charge
conference rather than in connection with his motions for a
required finding of not guilty. We have said that a generally
phrased motion for a required finding of not guilty in a murder
case is inadequate to preserve a claim for insufficiency of the
evidence where enough evidence supports the conviction under an
alternate theory. See Commonwealth v. Berry, 431 Mass. 326, 331
(2000). Here, however, the defendant identified his motion as
one focusing on the joint venture theory, and no other theory
supported a conviction of murder. Thus, we conclude that the
claim of error was preserved.

beyond a reasonable doubt. See Commonwealth v. Latimore, 378 Mass. 671, 676-677 (1979). Where, as here, an element of the offense is that the perpetrator is armed, the Commonwealth must prove that the defendant knew that at least one coventurer was armed. See G. L. c. 265, § 18C; Tejeda, 473 Mass. at 280. The defendant contends that evidence that he was aware that his coventurers were armed before they entered the apartment is impermissibly thin. We disagree.

At trial, the Commonwealth presented evidence that the defendant knew his coventurers had access to firearms. One witness testified that, during a visit to the witness's apartment on the weekend prior to the shooting, Pytou Heang spoke of robbing a drug dealer in the defendant's presence. The witness further testified that Pytou Heang made a gesture with his hand in his pocket as if he had a gun, prompting the witness to respond, "[I]f you got a gun, get out of my house."[6]

---

[6] The witness testified with the assistance of an interpreter, and his testimony was, at times, difficult to follow. He appeared to contradict himself about whether the defendant was in the living room for the exchange about the gun. He began by testifying that the defendant was in the room, before saying that "[the defendant] was in and out of my room. I don't know whether he's in the living room or not." When the prosecutor followed up by asking again whether the defendant was in the room, the witness said, "Yes. [The defendant] there too."

When we review convictions for sufficiency of the evidence, "[i]t does not matter that some of the evidence could be characterized as equivocal or contradictory." Commonwealth v.

In addition, the jury heard testimony that the defendant knew the victims were drug dealers. Thus, the jury were permitted to infer that the defendant knew his coventurers would need weapons to "overcome victim resistance."[7] Commonwealth v. Quinones, 78 Mass. App. Ct. 215, 219 (2010). Accord Commonwealth v. Rakes, 478 Mass. 22, 33 (2017) (sufficient evidence of defendant's knowledge of coventurers' weapons existed where, inter alia, defendant knew victims were drug dealers).

Finally, even assuming that the defendant was initially unaware that his coventurers had firearms, the Commonwealth presented evidence that the defendant continued to participate in the joint venture even after shots were fired by acting as a lookout. When Judith opened her door to call for help, she saw

_____

Cove, 427 Mass. 474, 475 (1998), quoting Commonwealth v. James, 424 Mass. 770, 785 (1997). We have specifically held that "[t]he fact that [a witness's] testimony was inconsistent and contradictory does not render the evidence insufficient." Commonwealth v. Fitzgerald, 376 Mass. 402, 410 (1978). Here, as the witness testified that the defendant was in the room to hear the statement about the gun, the jury heard evidence that allowed them to conclude that the defendant knew his coventurer likely had access to a firearm.

[7] The defendant argues that, as the intended victims were a teenaged girl, her incapacitated father, and her unarmed mother, this is not a situation in which the jury could infer that the defendant would expect that his coventurers would be armed based on an anticipated need to overcome victim resistance. However, the victims' physical characteristics equally support an inference that they themselves would be armed. Cf. Commonwealth v. Netto, 438 Mass. 686, 703 (2003).

the defendant standing at the end of her driveway, looking back and forth; when the defendant saw Judith, he "smirk[ed]." Where a defendant continues to act in furtherance of the joint venture even after learning of a coventurer's weapon, we have allowed an inference that the coventurer had the requisite intent for the joint venture. See, e.g., Rakes, 478 Mass. at 33 ("Even if the defendant had been unaware that [his coventurer] possessed a weapon in advance, it would be reasonable to conclude that he became aware over the course of the robbery and continued to participate, implicating him in the joint venture"); Commonwealth v. Semedo, 422 Mass. 716, 719 (1996).

Although this is a close case, and, separately, each piece of evidence might not have been sufficient, taken as a whole the evidence supports the convictions. Rakes, 478 Mass. at 32 (when reviewing sufficiency of evidence, we "view[] the evidence in the light most favorable to the prosecution" and "draw all reasonable inferences in favor of the Commonwealth").

2. Merger. The defendant claims that the judge erred by failing to instruct the jury on the merger doctrine of felony-murder. According to the merger doctrine, a defendant can only be convicted of felony-murder if he or she committed or attempted to commit a felony that is independent of the conduct necessary to cause the victim's death, because the felony that caused the death "merges" with the killing and cannot be the

predicate offense.  Commonwealth v. Fredette, 480 Mass.    ,
(2018), citing Commonwealth v. Holley, 478 Mass. 508, 519
(2017).

To prove that the defendant was guilty of armed home
invasion, the Commonwealth's burden was to prove beyond a
reasonable doubt that the defendant

> "(1) entered the dwelling of another, (2) knowing, or
> having reason to know, that one or more persons were
> present within the dwelling house when he entered or
> remained in it; (3) was armed with a dangerous weapon at
> the time of entry; and (4) used force or threatened the
> imminent use of force on any person within the dwelling
> house, or intentionally caused injury to any such person."

Commonwealth v. Sullivan, 478 Mass. 369, 373-374 (2017).  As
armed home invasion includes as an element the use of force, the
threatened imminent use of force, or causing injury to a person
within a dwelling, Commonwealth v. Doucette, 430 Mass. 461, 465-
466 (1999), the offense merges with a death that occurs as a
result unless the jury find beyond a reasonable doubt that the
crime consisted of conduct "separate and distinct from the
conduct necessary to kill the victim."  Fredette, 480 Mass.
at    .  Accord Commonwealth v. Stokes, 460 Mass. 311, 314 n.8,
315 (2011); Commonwealth v. Bell, 460 Mass. 294, 300-301 (2011).

It was error for the judge not to instruct the jury on this
point, because the jury were unaware that they were required to
find the defendant guilty of a felony distinct from the killing
violence.  As the defendant did not object at trial, we look to

whether that error caused a substantial likelihood of a miscarriage of justice.[8]  See Commonwealth v. Tavares, 471 Mass. 430, 436-437 (2015).  We therefore consider the impact of the error on the trial.  See Commonwealth v. Gunter, 427 Mass. 259, 274 (1998).

In cases where the defendant challenges the lack of merger instructions, if the "jury could have found beyond a reasonable doubt" that the defendant, through his or her coventurers, committed at least one unmerged life felony, then the error did not create a substantial likelihood of a miscarriage of justice. Gunter, 427 Mass. at 274.  See Commonwealth v. Kilburn, 438 Mass. 356, 360 (2003).  We therefore consider whether the Commonwealth presented evidence of an unmerged life felony, i.e., a felony that could have served as a predicate felony for the defendant's convictions of felony-murder in the first degree.[9]  See Kilburn, supra at 359; Gunter, supra at 273-274.

---

[8] The defendant did not object to the lack of a merger instruction, or even engage with the judge on the issue when the judge raised it sua sponte.  The judge did not have the benefit of Commonwealth v. Bell, 460 Mass. 294, 300 (2011), in which we held that claims of merger where the predicate felony is armed home invasion depend upon the specific facts of the case.

[9] We reject the defendant's assertion that the judge told the jury that the Commonwealth was not alleging any felony beyond the use of force that killed the two victims.  The judge actually instructed that "the Commonwealth is claiming that there was the exercise of force against Robert Finnerty and Amy Dumas."  The judge did not instruct the jury not to consider any other acts of violence.  Indeed he repeatedly instructed the

See also Commonwealth v. Garcia, 470 Mass. 24, 38 (2014) (for felony-murder in first degree, predicate felony must be punishable by life imprisonment).

Here, the jury could have found beyond a reasonable doubt that the defendant committed an act of armed home invasion against Judith, even though there was no separate indictment for that crime naming her as a victim:[10]  "the felony on which a charge of felony-murder is premised may be uncharged, so long as the evidence supports it."  Stokes, 460 Mass. at 315.  See Gunter, 427 Mass. at 274 (irrelevant that defendant was not separately indicted for unmerged felonies).  Because the armed home invasion statute includes as an element the use of force or threat of force, see Sullivan, 478 Mass. at 373-374, the threat of force against an occupant of the premises satisfies that element of the crime.  Accordingly, an armed home invasion against Judith is a separate, distinct, and unmerged felony for purposes of the felony-murder doctrine.  See Commonwealth v. Gorassi, 432 Mass. 244, 247 (2000) ("an assault may be accomplished . . . by putting another in fear of an immediately threatened battery").

---

jury on alternate elements of armed home invasion:  use or threat of force.

[10] The indictment did not name a victim.

The Commonwealth presented overwhelming evidence of an act of armed home invasion against Judith. When Judith opened her door, two masked assailants armed with guns pushed their way into her home. She tried to flee, falling over in the process, before beginning to scream. She later realized that she had involuntarily urinated during the attack. Given this evidence of a separate felony against Judith, the judge's failure to instruct the jury concerning the merger doctrine did not give rise to a substantial likelihood of a miscarriage of justice. See Gunter, 427 Mass. at 274.

3. Constitutionality of felony-murder. The defendant also argues that we should abolish the doctrine of felony-murder entirely. In other words, the defendant seeks the benefit of our holding in Commonwealth v. Brown, 477 Mass. 805, 825 (2017) (Gants, C.J., concurring), in which we limited felony-murder to its statutory role as an aggravating element by holding that "a defendant may not be convicted of murder without proof of one of the three prongs of malice." Id. at 807-808. In Brown, however, we also held that the new rule was prospective only. Id. at 807. We decline to depart from that holding.

4. Review under G. L. c. 278, § 33E. Finally, the defendant asks us to exercise our extraordinary power under G. L. c. 278, § 33E. After reviewing the briefs and the entire record, we discern no reason to exercise our power under § 33E.

Judgments affirmed.

Order denying motion for a
   new trial affirmed.