NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

17-P-829                                          Appeals Court


COMMONWEALTH  vs.  CHAD CONNORS (and a companion case[1]).


No. 17-P-829.

Worcester.      December 13, 2018. - March 11, 2019.

Present:  Kinder, Neyman, & Desmond, JJ.


Homicide.  Kidnapping.  Felony-Murder Rule.  Joint Enterprise.
    Evidence, Joint venturer, Hearsay, Third-party culprit,
    Reputation.  Practice, Criminal, Required finding, Hearsay,
    Transcript of hearing.



Indictments found and returned in the Superior Court
Department on November 21, 2014.

The cases were tried before Brian A. Davis, J.


Dana Alan Curhan for Chad Connors.
Jennifer H. O'Brien for Allen Erazo.
Donna-Marie Haran, Assistant District Attorney, for the
Commonwealth.


---

[1] Commonwealth vs. Allen Erazo.  We spell Erazo's name as it
appears in the indictment.  Commonwealth v. Harris, 468 Mass.
429, 429 n.1 (2014).

KINDER, J.  On August 12, 2014, inmate Michael Freeman beat inmate William Sires to death in a cell at the Souza-Baranowski Correctional Center (SBCC).  The defendants, Chad Connors and Allen Erazo, who are also inmates at SBCC, were charged with murder in the first degree as joint venturers based on evidence that Erazo physically forced the victim into the cell where Freeman was waiting while Connors closed the curtain on the cell door and stood by during the beating.

On April 8, 2016, Freeman pleaded guilty to murder in the first degree.  On May 6, 2016, following a jury trial in the Superior Court, the defendants were both convicted of murder in the second degree based on a theory of felony-murder, with a predicate felony of kidnapping, G. L. c. 265, § 26.  Erazo's conviction of murder in the second degree was also based on a theory of intent-based murder.[2]

On appeal, the defendants challenge the sufficiency of the evidence.  Erazo also claims error in several evidentiary rulings and raises one argument pursuant to Commonwealth v. Moffett, 383 Mass. 201 (1981).  Specifically, he argues that his felony-murder conviction is not consonant with justice in light of Commonwealth v. Brown, 477 Mass. 805, 807 (2017), which

---

[2] The jury's verdict slips designated the bases of the convictions.

narrowed the scope of felony-murder liability and prospectively "eliminated felony-murder in the second degree." Commonwealth v. Fredette, 480 Mass. 75, 80 n.9 (2018). Discerning no error, we affirm.[3]

Background. We summarize the evidence in the light most favorable to the Commonwealth. See Commonwealth v. Latimore, 378 Mass. 671, 677-678 (1979). In 2014, Freeman, the defendants, and the victim resided in the N1 housing unit at SBCC. The unit is monitored by recorded video surveillance, and a video recording that was introduced at trial showed the following sequence of events on August 12, 2014. The victim, who was in his seventies and walked with a cane, fought with Freeman as the victim walked around the common area of the unit during recreational time. After other inmates stopped the physical altercation, Freeman, Connors, and another inmate,

---

[3] Counsel for Connors stated at oral argument that Connors intended to join in Erazo's arguments and would be filing a motion to that effect. No such motion was filed, and we decline to consider whether the issues raised by Erazo apply to Connors. We note that Connors did not object to many of the evidentiary rulings that form the basis of Erazo's appeal, and the issues raised by Erazo were not argued in Connors's brief and are thus waived. Mass. R. A. P. 16 (a) (4), as amended, 367 Mass. 921 (1975). See also Commonwealth v. Carey, 407 Mass. 528, 531 n.3 (1990) (claim raised at oral argument but not briefed is waived). That notwithstanding, even if counsel for Connors had timely joined in all of Erazo's arguments, we would still affirm the convictions for all of the reasons set forth in this opinion.

Shaun McDonald, huddled together as the victim continued walking around the common area. When Freeman confronted the victim a second time shortly thereafter, they exchanged words and the victim walked away. Freeman and McDonald then talked in front of McDonald's cell (number twenty-three) while Connors sat on the table closest to the officers' station. Freeman briefly entered cell twenty-three, exited, and spoke to McDonald and Erazo. Connors, Freeman, and McDonald then engaged in conversation as the victim walked toward cell twenty-three. As the victim approached cell twenty-three, Freeman and McDonald entered the cell and Connors stood by the door. Erazo approached the victim suddenly from behind, wrapped his arms around the victim, and violently pulled him inside cell twenty-three. Connors stepped toward the cell, Erazo exited, and Connors pulled a curtain across the door.[4] Connors immediately walked away from the cell and toward the officers' station, McDonald exited the cell, and the door to cell twenty-three then closed.[5] Connors circled back to the common area and sat at a

_____

[4] The cell doors have curtains for inmates who want privacy during recreational time.

[5] Inmates are permitted to ask a correction officer (CO) to close any cell door during recreational time by yelling out "close the door." The CO can open or close any cell door by computer from the CO station. CO David Bolduc testified that, on August 12, 2014, he closed the door to cell twenty-three after he heard an inmate yell out for it to be closed. Bolduc did not recognize the inmate's voice. Bolduc reopened the door

table across from cell twenty-three with a direct view of the cell and the officers' station. Connors then left the table and stood next to the cell directly across from cell twenty-three. One and one-half minutes later, the door to cell twenty-three reopened. Neither the victim nor Freeman reemerged.

Approximately thirty minutes after Erazo forced the victim into cell twenty-three, correction officer (CO) Nicholas Poladian was making his rounds when he noticed blood on the wall in that cell. Poladian looked inside and saw an inmate on the floor covered in blood. The inmate, later identified as the victim, was unrecognizable as a result of the beating. Freeman, who was standing in the rear of the cell, said, "I did this. What do you want me to do now?" When asked where the weapon was, Freeman responded, "I did it. Everything is in there. I'm the only one." Freeman also said, "I beat him to death. I killed him." The victim's cane lay across his chest.

Discussion. 1. Sufficiency of the evidence. The defendants raise several challenges to the sufficiency of the Commonwealth's evidence. Erazo argues that there was insufficient evidence that a kidnapping occurred. Both defendants claim that there was insufficient evidence that they

---

about one and one-half minutes later, when an inmate yelled for it to be opened.

knowingly participated in a joint venture to kidnap the victim. See Commonwealth v. Zanetti, 454 Mass. 449, 467-468 (2009). Connors argues that there was insufficient evidence that a kidnapping occurred independent of the murder, and Erazo challenges the sufficiency of the evidence of his intent to commit murder in the second degree. Our task in analyzing these claims is to determine "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt (emphasis in original)." Latimore, 378 Mass. at 677, quoting Jackson v. Virginia, 443 U.S. 307, 318-319 (1979).

a. Felony-murder based on kidnapping. "To prove a person guilty of kidnapping, the Commonwealth must establish beyond a reasonable doubt that the person 'without lawful authority, forcibly or secretly confine[d] or imprison[ed] another person within this commonwealth'" against that person's will. Commonwealth v. Oberle, 476 Mass. 539, 548 (2017), quoting G. L. c. 265, § 26. Here, video surveillance evidence clearly showed Erazo forcibly pulling the victim into cell twenty-three as the victim resisted. Erazo concedes that the victim did not voluntarily enter the cell. "Confinement is broadly interpreted to mean any restraint of a person's movement," Commonwealth v. Boyd, 73 Mass. App. Ct. 190, 193 (2008) (quotation omitted), and

the evidence showed that Erazo pulled the victim into cell twenty-three against his will while Connors stood by the door. Erazo then left the cell, Connors pulled a curtain across the door, and the door closed for one and one-half minutes. The victim never reemerged. From this evidence a rational juror could conclude that the defendants confined the victim in cell twenty-three. See Oberle, supra (Commonwealth required to prove act of confinement, not a specific intent to confine).

Further, the jury could reasonably infer from the video surveillance evidence that the defendants "knowingly participated in the commission of the [kidnapping] with the intent required for that offense." Commonwealth v. Phap Buth, 480 Mass. 113, 115 (2018). See Zanetti, 454 Mass. at 468. The jury saw that Freeman and Erazo conferred before Erazo took a position at the end of the hall and waited for the victim. Freeman and Connors then spoke in front of cell twenty-three before Freeman entered the cell. Connors stood by the door to cell twenty-three and watched as Erazo pulled the victim inside, then waited for Erazo to leave before he pulled the curtain across the cell door. Connors walked toward the officers' station at the same time that someone asked for the door to cell twenty-three to be closed and stood watch until the door reopened. Erazo passed by cell twenty-three numerous times while only Freeman and the victim were inside. The jury could

reasonably infer from this evidence that the defendants were aware of Freeman's plan to beat the victim in cell twenty-three and that they actively participated in the forcible confinement that preceded it.

b. Merger. Connors's argument that there was insufficient evidence of a kidnapping independent of the murder is equally unavailing. "According to the merger doctrine, a defendant can only be convicted of felony-murder if he or she committed . . . a felony that is independent of the conduct necessary to cause the victim's death." Phap Buth, 480 Mass. at 118. "[D]etermining whether a predicate felony merges with the homicide depends on the resolution of two distinct inquiries": "[f]irst, if the underlying predicate felony has an intent or purpose separate and distinct from the act causing physical injury or death, the merger doctrine is inapplicable, and . . . no further analysis is required." Commonwealth v. Fredette, 480 Mass. 75, 81 (2018). "If the felony does not have an independent intent or purpose, the second inquiry is whether the conduct constituting the felony is separate and distinct from the conduct that caused the homicide itself." Id. Here, Connors's argument does not survive the first inquiry "[b]ecause the crime of . . .. . . kidnapping has an independent felonious purpose from the intent to cause physical injury or death." Id. at 86 n.10. Accordingly, we need not decide whether the conduct

constituting the kidnapping was separate and distinct from the conduct that caused the homicide.

c. Intent-based murder in the second degree. "Murder in the second degree is an unlawful killing with malice aforethought." Commonwealth v. Casale, 381 Mass. 167, 171-172 (1980). Malice includes committing an "intentional act which, in the circumstances known to the defendant, a reasonable person would have understood created a plain and strong likelihood of death." Commonwealth v. Earle, 458 Mass. 341, 346 (2010). Erazo concedes that he intentionally delivered the victim to Freeman so that Freeman and the victim could fight. There is no question that the victim, who was in his seventies and disabled, died during the course of that "fight." Viewing this evidence in the light most favorable to the Commonwealth, a rational juror could conclude that Erazo understood that his actions created a plain and strong likelihood of death. Accordingly, we reject Erazo's claim that there was insufficient evidence of his intent to commit murder in the second degree.

2. Evidentiary rulings. Erazo raises several claims of error in the judge's evidentiary rulings. Specifically, Erazo contends that the judge erred when he (1) excluded the transcript of Freeman's guilty plea colloquy, (2) excluded evidence that Erazo was scheduled to be released soon after the murder, (3) allowed the Commonwealth to introduce evidence that

both defendants were from East Boston, and (4) excluded evidence of the victim's reputation in the community and propensity for violence.  We address each claim in turn.[6]

a. Freeman's guilty plea.  In March, 2016, a Superior Court judge, other than the trial judge, rejected Freeman's first attempt to plead guilty to murder in the first degree because Freeman disagreed with the prosecutor's recitation of the facts.  Specifically, Freeman disputed the statement that he planned the killing in advance and recruited others to help him.  On April 8, 2016, Freeman pleaded guilty before another Superior Court judge who also was not the trial judge.  Before trial, Erazo filed a motion in limine seeking to introduce portions of the March, 2016, transcript and the entire transcript of Freeman's guilty plea as evidence of a third-party culprit.  The judge ruled that the fact of Freeman's guilty plea was admissible and that Freeman could testify at trial, but he excluded the transcripts of the guilty plea colloquy, reasoning that the statements made during the colloquy were inadmissible hearsay

---

[6] Erazo also claims that the judge improperly excluded a statement Freeman purportedly made in the health services unit following the murder, that the victim "didn't deserve it that bad . . . . He thinks just because he is an old man and handicapped, he can run his mouth to anyone."  A voir dire examination of three COs regarding Freeman's statements in the health services unit produced no evidence that Freeman made such a statement.  Accordingly, we need not address that claim.

and did not qualify as third-party culprit evidence.  Because Erazo objected and the issue is of constitutional dimension, we independently review the judge's decision under the prejudicial error standard.  See Commonwealth v. Foxworth, 473 Mass. 149, 160 (2015); Commonwealth v. Scott, 470 Mass. 320, 327 (2014).

Erazo claims that Freeman's guilty plea colloquy qualified as an exception to the rule against hearsay because it was a statement against his penal interest.  Under this exception, a statement is admissible if (1) the declarant's testimony was unavailable, (2) the statement subjected the declarant to criminal liability such that no reasonable person would have made the statement unless he believed it to be true, and (3) the statement is sufficiently trustworthy.  See Commonwealth v. Weichell, 446 Mass. 785, 802-803 (2006).  Here, the judge assumed Freeman's unavailability based on trial counsels' representations that Freeman, if called to testify, would exercise his privilege under the Fifth Amendment to the United States Constitution not to incriminate himself.  The judge concluded, however, that the portion of the colloquy that Erazo sought to admit at trial -- Freeman's disavowal of any joint venture with the defendants -- was not sufficiently trustworthy.[7]

---

[7] The judge noted that Freeman pleaded guilty two years after the murder "in a carefully choreographed event," and that Freeman "had a long time to think about it."

We discern no error in that conclusion, where the plea colloquy came nearly two years after the murder and was contradicted by the surveillance video. See id. at 803 (judge may consider timing of statement and reliability of declarant when assessing trustworthiness).

Next, Erazo claims that Freeman's statements during the guilty plea colloquy should have been admitted as third-party culprit evidence. "Evidence that a third party committed the crimes charged against the defendant . . . is admissible provided that the evidence has substantial probative value." Mass. G. Evid. § 1105 (2018). See Commonwealth v. Silva-Santiago, 453 Mass. 782, 800-801 (2009). The Supreme Judicial Court "has given wide latitude to the admission of relevant evidence that a person other than the defendant may have committed the crime charged." Id. However, Erazo provides no authority, and we have found none, for the proposition that third-party culprit evidence is admissible when the claimed third-party culprit is the principal and the defendant is charged under a joint venture theory. The case law is to the contrary. See Commonwealth v. Pimental, 454 Mass. 475, 479 (2009) (third-party evidence consisting of prior bad acts had no application in joint venture case). Thus, the judge properly excluded the guilty plea colloquy as third-party culprit evidence.

In any event, exclusion of Freeman's guilty plea colloquy did not prejudice Erazo where the jury heard numerous other statements by Freeman that he was the "only one" and that it was "all me."  The judge's decision, therefore, did not deprive Erazo of the right to present a defense.

b. Erazo's statements and release date.  Over Erazo's objection, the judge admitted statements by Connors and Erazo, made to a State Police trooper on the day of the murder, that they were both from East Boston.  The judge denied Erazo's request that he be allowed to introduce another portion of the statement, that he thought he was "getting out" in September.  Because Erazo objected, we review for prejudicial error.  Foxworth, 473 Mass. at 160.

Although the probative value of the East Boston connection between the defendants was slight, so too was the potential prejudicial impact of that testimony.  The jury were already aware that Erazo came from East Boston because his counsel introduced him that way during empanelment.  The fact that Connors had lived in the same community established no more connection between the defendants than was evident from the video surveillance evidence.

We discern no error in the exclusion of a trooper's statement in a recorded conversation with Erazo that Erazo was "getting out soon."  The trooper's statement and Erazo's

affirmative response to it were out-of-court statements offered to prove the truth of the matter asserted in that statement and therefore qualified as hearsay.[8]  See Mass. G. Evid. § 801 (c). Erazo cites no exception for the admission of those statements.

c. Victim's reputation.  Before trial, the judge allowed the Commonwealth's motion in limine to exclude evidence of the victim's character.  Erazo argues that the judge abused his discretion in allowing the motion, because the victim's reputation in the community and propensity for violence were relevant to the issue of Erazo's intent.  We discern no abuse of discretion.

First, the defendants made no offer of proof regarding the victim's reputation in the prison or his propensity for violence.  Instead, they relied solely on the transcript of the defendants' interviews with a State trooper, wherein the trooper referred to the victim's disciplinary history, the reason for the victim's incarceration (1973 murder of his mother), and the fact that the victim allegedly had a "big mouth" and did not get along with others.  "It is only where the sources [of general reputation evidence] are sufficiently numerous and general that they are viewed as trustworthy" and therefore probative.

---

[8] The trooper stated, "So you're getting out soon, is that correct?"  Erazo responded, "Yes, sir."

Commonwealth v. LaPierre, 10 Mass. App. Ct. 871, 871 (1980).
"We do not allow the admission of the private opinions of
individual witnesses as character evidence." Commonwealth v.
Adjutant, 443 Mass. 649, 664 (2005).

The judge also properly excluded evidence of the victim's
alleged propensity for violence because (1) neither defendant
claimed to have acted in self-defense, Commonwealth v.
Phachansiri, 38 Mass. App. Ct. 100, 106 (1995), cert. denied,
519 U.S. 900 (1996), and (2) the video surveillance evidence
made it clear that the victim was not the first aggressor.  See
Adjutant, supra (evidence of victim's specific acts of violence
admissible "where the identity of the first aggressor is in
dispute").  Where there was no claim that the defendants were
reacting to anything that the victim did, we see no error in the
judge's decision that improperly prejudiced the defendant.
Commonwealth v. Flebotte, 417 Mass. 348, 353 (1994) (defining
prejudicial error).[9]

3.  Application of Commonwealth v. Brown.[10]  Relying on
Commonwealth v. Brown, 477 Mass. 805 (2017), Erazo claims that

---

[9] We have carefully reviewed Erazo's preserved claim that
the judge improperly admitted evidence regarding a medical
emergency in another unit, and his unpreserved claim that the
judge improperly allowed the Commonwealth to argue in closing
that Connors orchestrated the emergency in furtherance of the
joint venture.  We see no merit in either claim, no prejudice to
Erazo, and no substantial risk of a miscarriage of justice.

his conviction of murder in the second degree on a theory of felony-murder is not consonant with justice. In Brown, the Supreme Judicial Court prospectively narrowed the scope of felony-murder liability to require proof that the defendant acted with one of the three prongs of malice. Id. at 807. Constructive malice, meaning the intent to commit the underlying felony, will no longer support a felony-murder conviction. Id. at 831 (Gants, J. concurring). Instead, in order to convict a defendant of felony-murder, the Commonwealth must now establish "that he or she intended to kill or to cause grievous bodily harm, or intended to do an act which, in the circumstances known to the defendant, a reasonable person would have known created a plain and strong likelihood that death would result." Id. at 825 (Gants, J., concurring).

The majority holding in Brown applies only to cases tried after the Court's decision. Id. at 808. It has "no effect on felony-murder cases already tried, including this case." Id. at 834 (Gants, J., concurring). See also Phap Buth, 480 Mass. at 120. Consequently, Brown has no application here.

                                        Judgments affirmed.

---

[10] Erazo's counsel advances this argument pursuant to Commonwealth v. Moffett, 383 Mass. 201 (1981).